**Michael WENGLIKOWSKI, Petitioner,**

**v.**

**Kurt JONES, Respondent.**

**No. 99–10449–BC.**

United States District Court,
E.D. Michigan,
Northern Division.

Feb. 25, 2004.

Laura K. Sutton, Manchester, MI, for Petitioner.

Laura G. Moody, Lansing, MI, for Respondent.

### ORDER REJECTING IN PART THE REPORT OF THE MAGISTRATE JUDGE BUT ADOPTING THE RECOMMENDATION OF DISMISSAL AND DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS

LAWSON, District Judge.

This matter is before the Court on the report of Magistrate Judge Charles E. Binder, to whom this matter had been referred, recommending that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied. The petitioner timely filed objections. After conducting a *de novo* review of the petition, the magistrate judge's report, the petitioner's objections, and the other materials on file, the Court concludes that the magistrate judge erred in concluding that the Michigan courts properly rejected the petitioner's Confrontation Clause claim. However, the Court ultimately agrees with the recommendation of dismissal because it finds the error likely to have been harmless. The Court also agrees that the remaining claims are either procedurally defaulted or lack merit. Accordingly, the Court will adopt the report in part, adopt the recommendation of dismissal, and deny the petition.

I.

The facts of this case are thoroughly summarized by the magistrate judge in his report. Neither party has objected to that summary, and the Court therefore adopts it as its own.

Michael Wenglikowski was convicted in 1983 by a jury in Bay County Circuit Court of conspiracy to commit first-degree murder, contrary to Mich. Comp. Laws § 750.157a, and assault with intent to commit murder, Mich. Comp. Laws § 750.83. The convictions arose from a brutal attack on his wife, Jeannette, that left her brain-damaged. The testimony at trial indicated that Michael and Jeannette had been experiencing marital problems but had reconciled on the day of the incident. Michael, Jeannette, and Mark Wenglikowski, the defendant's brother, went to My Bar on the night of the incident. The testimony at trial suggested that the brothers then went to the restroom, at which time they plotted to kill Jeannette and make it look like Michael and Jeannette had been mugged. When Michael and Jeannette left the bar, Mark struck Jeannette over the head with an axe handle and struck Michael as well.

Michael and Mark were tried separately. After he was convicted, Michael was sentenced to concurrent terms of sixty to

ninety years imprisonment. Michael unsuccessfully appealed his convictions in 1984 to both the Michigan Court of Appeals and the Michigan Supreme Court. He also filed a motion for post-conviction relief in 1991, which was denied. On appeal, the Michigan Court of Appeals "corrected" the petitioner's sentence for conspiracy to commit first-degree murder from sixty to ninety years to a life sentence, but otherwise affirmed the trial court's decision. The Michigan Supreme Court denied review. A second post-conviction motion was filed in 1996, which was denied at all three levels of review for failure to comply with Michigan Court Rule 6.503(D).

The instant petition for a writ of habeas corpus was filed on November 19, 1999, raising the following claims:

I. Petitioner Was Denied His Constitutional Right of Confrontation When the Trial Court Admitted over Objection a Hearsay Statement by Alleged Co-conspirator Mark Wenglikowski That He Had Indeed Assaulted the Victim.

II. Petitioner Was Denied His Constitutional Right of Confrontation under Both Federal and State Constitutions by the Trial Court's Refusal to Allow Defense Counsel to Cross-examine Gary Wenglikowski Concerning His Psychiatric Problems in an Effort to Impeach His Harmful Testimony.

III. The Trial Court's Threat to Allow the Prosecutor to Impeach a Defense Theory That Mark Wenglikowski Had "Attacked Both" Petitioner and His Wife with Inadmissible Hearsay Evidence Denied Petitioner His Right to Present a Defense under Both Federal and State Constitutions.

IV. Petitioner's Due Process Rights under the Fourteenth Amendment Were Denied Where So Much Highly Prejudicial "Bad Acts" Evidence Was Improperly Admitted in a Close Case That the Trial Was Rendered Fundamentally Unfair.

V. The State Trial Court's Interference with the Defense Examination of Witnesses and its Overall Display of Partiality Towards the Prosecution Violated Petitioner's Rights to a Fair Trial and to Confrontation.

VI. Petitioner's Rights under the Due Process Clause of the Fourteenth Amendment Were Violated When the Court's Instruction on Intent Shifted the Burden of Proof on the Central Issue of Whether an Agreement to Commit First Degree Murder Was Proven Beyond a Reasonable Doubt.

VII. The Failure of the State Trial Court to Give a Requested Cautionary Instruction on the Limited Use of the Co-conspirator's Hearsay Confession Denied Petitioner a Fair Trial.

VIII. Petitioner Was Denied Effective Assistance of Trial Counsel, Thus Violating His Sixth Amendment Rights.

IX. Petitioner Was Denied His Right to the Effective Assistance of Counsel on Appeal.

X. Michigan Court Rule 6.508(D) Is Not an Independent and Adequate Ground upon Which to Bar Habeas Corpus Relief.

The respondent filed an answer alleging that the claims were either procedurally defaulted or meritless.

## II.

As the magistrate judge correctly observed, the petitioner's claims are reviewed against the standards established

by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (AEDPA). This Act "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising the question of effective assistance of counsel, as well as other constitutional claims. *See Wiggins v. Smith,* 539 U.S. 510, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003). The AEDPA applies to all habeas petitions filed after the effective date of the Act, April 24, 1996. *Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Because the petitioner's application was filed after that date, the provisions of the AEDPA, including the amended standard of review, apply to this case.

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins,* 539 U.S. at ——, 123 S.Ct. at 2535 (quoting *Williams v. Taylor,* 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); internal quotes omitted). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also Cremeans v. Chapleau,* 62 F.3d 167, 169 (6th Cir.1995) ("We give complete deference to state court findings unless they are clearly erroneous.").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases....
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

The Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409, 120 S.Ct. 1495. The Court defined "unreasonable application" as follows:

[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable....

[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law.... Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410–11, 120 S.Ct. 1495. *See also McAdoo v. Elo*, 346 F.3d 159, 165–66 (6th Cir.2003); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir.2003) (en banc); *Lewis v. Wilkinson*, 307 F.3d 413, 418 (6th Cir.2002).

### A.

The Court first will address those claims the parties agree to be properly considered on their merits.

The petitioner argues in his second claim that he was denied his Sixth Amendment right to confrontation when the trial court refused to allow defense counsel to cross-examine the petitioner's brother Gary Wenglikowski concerning his psychiatric problems in an effort to impeach his testimony. The magistrate judge found that the Michigan Court of Appeals correctly rejected this claim on direct review, holding that the defendant was precluded only from inquiring as to the *place* of Gary Wenglikowski's hospitalization, not as to the existence of Gary's psychological problems or other pertinent issues.

In his objections, the petitioner insists that questioning about Gary's place of hospitalization was relevant to show that Gary's memory regarding certain events was shoddy and unreliable. Specifically, the petitioner insists that Gary's recollection of the petitioner stating that he "wanted to get rid" of his wife was open to question, and that Gary's inability to recall where he was committed would have demonstrated to the jury that his memory as to what the petitioner may have said several years earlier was also unreliable.

■ A defendant in a criminal trial has the right to confront the witnesses called against him. U.S. Const. amend. VI. The Sixth Amendment's Confrontation Clause guarantees the accused the right to cross-examine adverse witnesses to uncover possible biases and expose the witness's motivation for testifying. *See Davis v. Alaska*, 415 U.S. 308, 316–317, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). The Confrontation Clause promotes reliability in criminal trials by providing defendants the opportunity for cross-examination. *Kentucky v. Stincer*, 482 U.S. 730, 739, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987); *see also Stevens v. Bordenkircher*, 746 F.2d 342, 346 (6th Cir. 1984). However, the Supreme Court has described the guarantee of the Confrontation Clause as "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985). Thus, "the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." *Id.* at 22, 106 S.Ct. 292.

■ The Court finds that the court of appeals did not act unreasonably in rejecting this claim. Defense counsel received a fair opportunity to make clear to the jury his client's belief that Gary's testimony

was unreliable. Defense counsel inquired as to whether Gary had "problems remembering things," if he "ever had any mental problems" that affected his memory, received an admission that Gary had been hospitalized "three or four" times, and that he was "doing a lot of drinking" during the time he claims the petitioner stated he wished to get rid of his wife. Trial Tr., vol 1, at 44–45. The only interruption of this colloquy was defense counsel's attempt to learn where Gary was committed. The prosecution promptly objected, and the trial judge sustained the objection. This sort of intrinsic impeachment should have been permitted as a matter of state evidence law. *See People v. Teague*, 411 Mich. 562, 566, 309 N.W.2d 530, 531 (1981) (citing *People v. Williams*, 159 Mich. 518, 124 N.W. 555 (1910)). However, defense counsel did not attempt to make an offer of proof of attempt to justify the question or seek to be heard on the matter. Instead, counsel simply moved on, indicating to this Court that his question regarding Gary's hospitalization did not have the significance the petitioner now tries to assert.

The magistrate judge correctly recommended that this claim be denied for want of a constitutional violation.

### B.

■ The petitioner's fifth claim is that he was denied a fair trial when the trial judge directly questioned witnesses and exhibited partiality to the prosecution. The Michigan Court of Appeals rejected this claim on direct review finding that the trial judge was permitted to ask questions per Michigan Rule of Evidence 614(b) and Michigan Compiled Laws § 769.29, the trial judge gave an appropriate cautionary instruction with regard to the questions he asked, and no improper comments were made.

The magistrate judge recommended that this claim be denied because the petitioner

had cited no Supreme Court precedent in support of his claim that the questioning of witnesses by the trial judge violates the Constitution, and he had similarly failed to cite any portion of the trial transcript demonstrating partiality to the prosecution. The magistrate judge concluded that his own review of the trial transcript supported the court of appeals' interpretation of what occurred at trial. The petitioner's objections simply demand *de novo* review and allege, with a citation to the Fourteenth Amendment, that "the denial of an impartial judge offends due process and is grounds for habeas relief." Objs. at 8.

■ The Court agrees with the magistrate judge. No Supreme Court precedent holds it unconstitutional for a trial judge to seek clarification from witnesses at trial. Furthermore, the petitioner's failure to isolate specific portions of the transcript indicating the trial judge's alleged bias is fatal to his claim. It is not the role of the district court to scour the petitioner's trial transcript to find support for the arguments in his habeas corpus petition. *Cf. In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001) (holding that the trial court is under no obligation to search the record to protect a non-moving party from summary judgment).

### III.

■ The respondent contends that several of the petitioner's claims were procedurally defaulted. For the most part, the magistrate judge agreed. The doctrine of procedural default provides that

[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of

federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict. *United States v. Frady*, 456 U.S. 152, 167–69, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir.1996). Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust*, 17 F.3d at 162; *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Warner v. United States*, 975 F.2d 1207, 1213–14 (6th Cir.1992), *cert. denied*, 507 U.S. 932, 113 S.Ct. 1314, 122 L.Ed.2d 702 (1993). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman*, 501 U.S. at 729–30, 111 S.Ct. 2546.

When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state grounds [sic] only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar. *Simpson*, 94 F.3d at 202. Whether the independent state ground—procedural or substantive—is adequate to support the judgment is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 122 S.Ct. 877, 885, 151 L.Ed.2d 820 (2002).

■ If the last state court from which the petitioner sought review affirmed the conviction both on the merits and alternatively on a procedural ground, the procedural default bar may be invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition. *Rust*, 17 F.3d at 161. If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

### A.

### 1.

■ The petitioner's first claim, which the respondent claims to be procedurally defaulted, is that the trial court erred in permitting the prosecution to introduce Mark Wenglikowski's confession that he hit Jeannette over the head with an axe handle outside of My Bar. The statement, offered over the objection of defense counsel, was as follows:

Q. Did [Mark Wenglikowski] say that he struck Jeannette Wenglikowski on that night?

A. Yes.

Trial Tr., vol. 3, at 509. The trial court found that the statement was properly ad-

mitted because nothing in it directly inculpated the petitioner, and therefore was permissible hearsay given Mark's refusal to testify at trial.

This claim, however, was not raised until the petitioner's 1991 motion for relief from judgment. The trial court found that the motion violated Michigan Court Rule 6.502(C)(14), which required the motion to state "whether any of the grounds for relief requested were raised before; if so, at what stage of the case, and, if not, the reasons they were not raised." 5/19/1992 Opinion, at 2. Having failed to mention that the issue was raised in pretrial motions and on appeal under a slightly different guise, the trial court denied the motion. On appeal, the Michigan Court of Appeals denied leave to appeal for "lack of merit in the grounds presented," *People v. Wenglikowski*, No. 161729 (Mich. Ct.App. June 2, 1993), and the Michigan Supreme Court denied leave because it was "not persuaded that the questions presented should be reviewed by this Court." *People v. Wenglikowski*, 444 Mich. 957, 514 N.W.2d 771 (1994).

The magistrate judge found that the petitioner's procedural default at the trial court level would not preclude habeas review because there was no evidence that Rule 6.502(C)(14) was firmly established and regularly applied. The magistrate judge based this conclusion on a survey of Michigan case in law in which this portion of Rule 6.502 was not cited.

The Court agrees that review of this claim is not barred, but for a different reason than that advanced by the magistrate judge. It is true that the Supreme Court has stated that state procedural rules, in order to constitute an adequate and independent bar to federal habeas review, must be "firmly established and regularly followed." *James v. Kentucky*, 466 U.S. 341, 348–49, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984). It is also true that the Supreme Court routinely conducts a survey of the jurisdiction's case law to determine ·whether the rule in question meets this standard. *Id.* at 345–48, 104 S.Ct. 1830; *Barr v. City of Columbia*, 378 U.S. 146, 149–50, 84 S.Ct. 1734, 12 L.Ed.2d 766 (1964); *Ford v. Georgia*, 498 U.S. 411, 422–25, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991). In all of these cases, however, the procedural requirement was established by a *common-law* rule in which case law was the only manner in which attorneys "could . . . fairly be deemed to have been apprised of its existence." *NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 457, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

That is not the case here, where we deal with an actual codified rule whose enactment preceded the petitioner's 1991 motion for relief from judgment. Under the magistrate judge's approach, such a rule could not be enforced as a procedural bar to habeas review unless it had been invoked in an exercise of futility on numerous occasions. However, state-court rules are codified for the primary purpose of providing notice to litigants and counsel of proper procedures, and parties before the courts are therefore considered fairly apprised of their existence. The Sixth Circuit suggested as much in *Jones v. Toombs*, 125 F.3d 945, 946 (6th Cir.1997), where the Court rejected the petitioner's contention that Michigan Court Rule 6.508(D)(3), barring most successive motions for post-conviction relief, was not "firmly established and regularly followed" because it was not codified until well after his conviction. The Court stated:

> Although MCR 6.508(D)(3) may not have been promulgated prior to Jones's appeal of right, it was certainly firmly established and regularly followed when Jones filed his 1990 motion, and all subsequent motions. Therefore, when the Michigan courts denied the motions brought after 1990 pursuant to MCR

6.508(D)(3), they were applying a firmly established and regularly followed procedural rule.

*Id.* at 947. The Sixth Circuit did not elaborate on its reason for this conclusion, but the Court cannot conceive of any rationale other than that the codification of a rule creates at least a presumption that the rule is firmly established until subsequent case law demonstrates otherwise.

Nonetheless, Michigan Court Rule 6.502(C)(14) does not establish a procedural bar to the review of the petitioner's Confrontation Clause issue. First, Michigan Court Rule 6.502 provides that if a post-conviction motion fails substantially to comply with the requirements of subsection (C), "the court may direct that it be returned to the defendant with a statement of the reasons for its return," which presumably would take the form of either a refusal to file the motion or a dismissal without prejudice. Nowhere does the Rule provide that a motion insufficient under subsection (C) is to be summarily denied on that ground, forever barring the litigant from correcting the motion and raising the issue in the future. To the extent that the Bay County Circuit Court concluded otherwise, this Court finds that such a gloss on Rule 6.502 is not firmly established and regularly followed as Michigan procedure adequate to preclude review of the petitioner's claims that his federal constitutional rights were violated.

Second, and more significantly, the Court finds that the Michigan appellate courts did not enforce the procedural default. As previously indicated, in order for a procedural default to be enforced on habeas review, the last reasoned state court judgment must enforce the default. *Coleman,* 501 U.S. at 729–30, 111 S.Ct. 2546. A leading case establishing this rule in the Sixth Circuit with regard to Michigan law in *Simpson v. Jones,* 238 F.3d 399 (6th Cir.2000). There, the petitioner raised several claims for the first time in a post-conviction motion even though they could have been raised earlier, contrary to Michigan Court Rule 6.508(D)(3), and reiterated certain claims previously resolved against him but which he did not appeal, contrary to Michigan Court Rule 6.508(D)(2). The Michigan Supreme Court had denied review of the petitioner's claims in a standard form order which stated that the petitioner failed to "meet the burden of establishing entitlement to relief under MCR 6.508(D)." *Id.* at 407. Although conceding that this "judgment was brief," the Sixth Circuit nonetheless concluded that the Michigan Supreme Court had invoked "an independent and adequate state procedural rule" and so invoked a procedural bar that precluded habeas review in the absence of demonstrated cause and prejudice. *Ibid; see also Burroughs v. Makowski,* 282 F.3d 410, 414 (6th Cir.2002) (finding the Michigan appellate courts to have invoked a procedural bar when they both issued orders denying review because the petitioner had failed to meet the requirements of Rule 6.508(D)).

The rule of *Simpson,* however, must be read in its fullness. If the invocation of a procedural bar by a state appellate court in denying leave to appeal constitutes a "reasoned opinion" for the purposes of diagnosing a procedural default, the issuance of a statement denying review which does not invoke a procedural default similarly constitutes a "reasoned opinion" that should be respected. *See Ylst,* 501 U.S. at 803, 111 S.Ct. 2590. By order of the state constitution, Michigan courts are required to state affirmatively the reasons for denying review to any appeal. Mich. Const., art VI, § 6 ("Decisions of the supreme court ... shall be in writing and shall contain ... reasons for each denial of leave to appeal."). This Court assumes that the Michigan courts faithfully follow their own rules, and, as the Sixth Circuit

did in *Simpson* and *Burroughs*, that the statement of reasons provided with each order denying leave to appeal contains an assessment of that court's rationale for denying review that is both true and correct.

Here, although the trial court invoked a procedural bar arising under Rule 6.502(C), that ground was not relied upon by the Michigan Court of Appeals or the Michigan Supreme Court in denying review. Specifically, the Michigan Court of Appeals denied review for want of merit, and the Michigan Supreme Court summarily concluded that review was not warranted. Although the Michigan Supreme Court's order is difficult to construe as a reasoned opinion, the order of the Michigan Court of Appeals plainly indicates that review was denied because the claims lacked merit. The Court therefore concludes that the procedural default was not enforced, and the petitioner may obtain review of his Confrontation Clause claim without demonstrating cause and prejudice.

2.

The magistrate judge found that this Confrontation Clause claim lacked merit. The record demonstrates that the trial court properly recognized the necessity to consider both Mark's unavailability and the reliability of the proffered hearsay testimony, correctly found Mark to be unavailable through his assertion of his Fifth Amendment right not to incriminate himself, and, in the magistrate judge's opinion, reasonably concluded that the testimony was *per se* reliable because it fell within a hearsay exception codified in the Michigan Rules of Evidence, namely a statement against penal interest. *See* Mich. R. Evid. 804(b)(3). The magistrate judge also found that the Supreme Court's decision in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), did not require a contrary conclusion because the

hearsay in question did not refer to the petitioner in any way.

There are two aspects to this claim: one is whether the admission of the testimony in question was impermissible hearsay contrary to the Confrontation Clause of the Sixth Amendment. The second inquiries whether the admission was independently violative of the Supreme Court's decision in *Bruton v. United States*, 391 U.S. 123, 126, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). *See Lee v. Illinois*, 476 U.S. 530, 542, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986) (distinguishing *Bruton* as a case about the effect of "limiting instructions," not Confrontation Clause violations *per se*). The Court will address the second concern first.

■ As previously noted, the Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Bruton v. United States*, 391 U.S. 123, 126, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court held that the admission of a nontestifying co-defendant's confession at a joint trial violated the petitioner's right of confrontation despite the jury being instructed that the co-defendant's confession could not be used to determine the petitioner's guilt or innocence. The Court held that the prejudice that may result from a co-defendant's confession "cannot be dispelled by cross-examination if the co-defendant does not take the stand. Limiting instructions to the jury may not in fact erase the prejudice." *Id.* at 132, 88 S.Ct. 1620 (internal quotation marks and citations omitted). However, the Supreme Court has also held that "[t]he Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when ... the confession is redacted to

eliminate not only the defendant's name, but any reference to his or her existence." *Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). The Sixth Circuit has itself made clear that *Bruton* does not bar the use of a redacted codefendant's confession "even if the codefendant's confession becomes incriminating when linked with other evidence adduced at trial." *United States v. Di Carlantonio,* 870 F.2d 1058, 1062 (6th Cir.1989).

The Court concludes that the Michigan courts did not try the petitioner in a manner at odds with *Bruton* and its progeny. First, it is worth noting, as the magistrate judge did, that the petitioner's brother was not a co-defendant at the petitioner's trial, but rather was tried separately. Even assuming that *Bruton* reasonably extends to the scenario in this case, however, *Bruton* by its terms governs only confessions that "expressly implicate" the defendant. *See* 391 U.S. at 124 n. 1, 88 S.Ct. 1620. The decision of the Michigan courts to allow the confession in this case, which did not make reference to the petitioner in any way, was ultimately vindicated by the Supreme Court's decision in *Richardson.* The petitioner does not seriously contest this finding in his objections, and the Court will adopt the magistrate judge's finding that the confession in this case does not implicate *Bruton* concerns.

As to the more general issue of whether the hearsay was properly admitted, the Court believes it clear that under current law that it should not have been. The Supreme Court has consistently held that "a non-testifying co-defendant's statements that implicate a defendant are presumptively unreliable and their admission violates the Confrontation Clause." *Calvert v. Wilson,* 288 F.3d 823, 828 (6th Cir.2002) (citing *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965)). For instance, in *Lee v. Illinois,* 476 U.S. 530,

106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), the Supreme Court explained:

> As we have consistently recognized, a codefendant's confession is presumptively unreliable as to the passages detailing the defendant's conduct or culpability because those passages may well be the product of the codefendant's desire to shift or spread blame, curry favor, avenge himself, or divert attention to another.

*Id.* at 545, 106 S.Ct. 2056. The Court held that admitting a non-testifying accomplice's confession to convict the defendant in that case violated the Confrontation Clause. In *Lilly v. Virginia,* 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999), the Supreme Court held that such statements do not fall within a firmly rooted exception to the hearsay rule, and thus cannot satisfy the Confrontation Clause unless they are supported by particularized guarantees of trustworthiness. *Id.* at 134, 119 S.Ct. 1887. Those indicia of reliability must be inherent in the statement itself and the circumstances under which it is made, without reference to corroborating or other evidence at trial. *See Idaho v. Wright,* 497 U.S. 805, 822, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). The Court offered a "cogent reminder" concerning evidence of this nature:

> It is highly unlikely that the presumptive unreliability that attaches to accomplices' confessions that shift or spread blame can be effectively rebutted when the statements are given under conditions that implicate the core concerns of the old *ex parte* affidavit practice—that is, when the government is involved in the statements' production, and when the statements describe past events and have not been subjected to adversarial testing.

*Lilly,* 527 U.S. at 137, 119 S.Ct. 1887. The *Lilly* Court further made clear its finding

that accomplice testimony had long been considered presumably unreliable for Confrontation Clause purposes. *See id.* at 134 n. 9, 119 S.Ct. 1887.

The question in this case, however, is whether such testimony was inadmissible under clearly established Supreme Court precedent at the time of the petitioner's conviction. *See Teague v. Lane,* 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion) (refusing to apply 1986 decision to invalidate a 1983 conviction). To determine whether the petitioner is entitled to application of a "new rule" under *Teague,* this Court first determines the date on which the petitioner's conviction became final. Next, it must resolve whether the state courts' determination was unreasonable in light of the jurisprudence in effect on the date the petitioner's conviction became final. If that decision was in fact a reasonable application of the Supreme Court's jurisprudence at the time, the Court must then conclude whether the rule is entitled to retroactive effect. *O'Dell v. Netherland,* 521 U.S. 151, 156–57, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997). A "new rule" of constitutional procedure not reasonably anticipated by state courts from previous Supreme Court decisions will not be applied retroactively unless (1) "the rule places class of private conduct beyond the power of state to proscribe or addresses a substantive categorical guarantee accorded by Constitution," or (2) is a "watershed rule implicating fundamental fairness and accuracy of criminal proceeding." *Horn v. Banks,* 536 U.S. 266, 271 n. 5, 122 S.Ct. 2147, 153 L.Ed.2d 301 (2002) (per curiam).

The petitioner relies heavily on *Lee v. Illinois,* to support his claims. In *Lee,* the Supreme Court rejected the contention that the confession of an accomplice that incriminated the defendant could be admitted as a "declaration against penal interest," finding that this exception "defines too large a class for meaningful Confrontation Clause analysis." 476 U.S. at 543 n. 4, 106 S.Ct. 2056. The Court further concluded that the accomplice's confession exhibited insufficient guarantees of reliability because it was given to the police under circumstances where it was clear that the "jig [was] up," and it may well have been in the accomplice's best interest to tell police what they wanted to hear. *Id.* at 544–45, 106 S.Ct. 2056. The Court also rejected the notion that the accomplice's confession was reliable because it significantly overlapped, or "interlocked," with the defendant's confession, finding that the confessions differed in important respects with regard to their proponents' respective responsibilities for the crime.

However, the petitioner's conviction in this case became final on March 24, 1986, and the spectrum of Supreme Court cases the Michigan courts were obligated to consider closed on that date. *Lee* was not decided until *June 3,* 1986, two months after the petitioner's conviction became final, and is therefore not a proper basis for habeas relief. The petitioner's objections rely heavily on the Supreme Court's statement in *Lilly* that its holding followed naturally from earlier decisions, but the decisions *Lilly* cited—*Bruton, Lee, Cruz v. New York,* 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987), and *Gray v. Maryland,* 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998)—also all postdate the petitioner's conviction with the exception of *Bruton,* which has been previously addressed. Notwithstanding this limitation, the Court concludes that the Michigan courts' rejection of the petitioner's claims was an unreasonable application of clearly established Federal law determined by the Supreme Court of the United States.

Two cases are illustrative. In *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Supreme Court

explained that the Confrontation Clause permits the introduction of hearsay testimony only when (1) the declarant is unavailable to testify and (2) the testimony bears "adequate indicia of reliability." *Id.* at 66, 100 S.Ct. 2531. "Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Ibid.* The examples of "firmly rooted" hearsay exceptions offered by *Roberts* included dying declarations, cross-examined prior trial testimony, and preliminary hearing testimony given under oath. *Id.* at 66 n. 8, 68, 100 S.Ct. 2531. In *Roberts,* the Court reversed the Ohio Supreme Court's finding that the defendant's Confrontation Clause rights were violated when the State introduced the preliminary hearing testimony of an unavailable witness at trial. Because the defendant had an adequate opportunity to face and cross-examine the absent witness under oath on a prior occasion, the lower Ohio courts did not err in permitting the transcript of that exchange to be read at trial.

Also crucially important is the Supreme Court's decision in *Douglas v. State of Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). There, the defendant and one Loyd were separately tried on charges of assault with intent to commit murder. Although he had already been tried and convicted of the same offense, Loyd invoked his Fifth Amendment right against self-incrimination on the witness stand and refused to testify. In response, the State Solicitor proceeded to read portions of Loyd's confession before the jury, pausing occasionally to inquire of Loyd whether the recitation was accurate, and to which Loyd each time responded that he was invoking his Fifth Amendment right not to testify. In addition to giving valuable details about the origin and planning of the crime committed by both men, the confession also implicated the defendant as the man who had fired the gun that wounded the victim. *Id.* at 416–17, 85 S.Ct. 1074.

The Supreme Court found that this exchange, which placed before the jury a confession by an accomplice whom the defendant had no opportunity to cross-examine, plainly violated the defendant's Confrontation Clause rights:

Loyd's alleged statement that the petitioner fired the shotgun constituted the only direct evidence that he had done so; coupled with the description of the circumstances surrounding the shooting, this formed a crucial link in the proof both of petitioner's act and of the requisite intent to murder. Although the Solicitor's reading of Loyd's alleged statement, and Loyd's refusals to answer, were not technically testimony, the Solicitor's reading may well have been the equivalent in the jury's mind of testimony that Loyd in fact made the statement; and Loyd's reliance upon the privilege created a situation in which the jury might improperly infer both that the statement had been made and that it was true.

*Id.* at 419, 85 S.Ct. 1074. Because the confession "clearly bore on a fundamental part of the State's case" against this defendant, the admission of the confession into evidence before the jury was both erroneous and unfairly prejudicial to Douglas, whose conviction was vacated. *Id.* at 420, 85 S.Ct. 1074.

Admittedly, *Roberts* and *Douglas* are somewhat at odds. The broad, sweeping language of *Douglas,* which made little effort to reconcile its Confrontation Clause holding with the Court's prior hearsay jurisprudence, feels somewhat out of place next to the careful reconciliation of the law of hearsay and the Confrontation Clause provided by *Roberts.* In the absence of

*Douglas,* the Court would be inclined to accept the State's argument that under *Roberts,* the Michigan courts had no fair warning that the "statement against interest" exception was not a firmly established hearsay exception. It was, after all, codified in both the Federal and Michigan Rules of Evidence, *see* Fed.R.Evid. 804(b)(3); Mich. R. Evid. 804(b)(3), and the Supreme Court in fact had earlier chastised the Mississippi Supreme Court for refusing to permit a defendant to adduce hearsay testimony under this exception in *Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). Nonetheless, *Douglas* was binding on Michigan courts at the time of the petitioner's conviction, and it is clear to this Court that if a "statement against interest" exception existed under the Confrontation Clause for the purposes of an accomplice's confession at trial, it would have permitted the introduction of Loyd's statement against the defendant in *Douglas.* In fact, *Lee* explicitly relied on *Douglas* to reject the notion that such testimony was proper under the Confrontation Clause. *See* 476 U.S. at 542–43, 106 S.Ct. 2056.

The Court concludes that this case is "materially indistinguishable" from *Douglas,* and that the trial court's failure to suppress Mark Wenglikowski's confession was therefore "contrary to" that Supreme Court decision within the meaning of *Williams v. Taylor,* 529 U.S. at 406, 120 S.Ct. 1495, 146 L.Ed.2d 389, and 28 U.S.C. § 2254(d)(1). As in *Douglas,* the accomplice in this case was tried separately for the same crimes, rendered a confession damaging to the petitioner, and the confession was admitted before the jury without being subjected to cross-examination, the "greatest legal engine ever invented for the discovery of truth." *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) (quotation omitted). Although the confession in *Douglas* admittedly was more damaging

in that it specifically identified that defendant as the triggerman, that distinction goes to the ultimate question of whether the error was harmless, and is not material to the question of whether error actually occurred. Here, notwithstanding the trial court's obvious good faith attempt to apply the precepts of *Ohio v. Roberts,* it nonetheless rendered a decision contrary to *Douglas v. Alabama,* and did so in violation of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

3.

■■■■■ However, this finding does not end the Court's inquiry. Even when a petitioner's federal constitutional rights have been violated, this Court may not grant relief if the error was harmless in light of the entire record. *See Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (holding that violations of the Confrontation Clause can be excused if the error was harmless). An error of this type is harmless unless it had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson,* 507 U.S. 619, 637–638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). The *Brecht* standard applies even if a federal habeas court is the first court to review the case for harmless error, as is the case here. *Gilliam v. Mitchell,* 179 F.3d 990, 995 (6th Cir.1999).

The *Brecht* test requires the court to assess the impact of the constitutional error on the jury's decision. It requires an analysis that is different than simply measuring the sufficiency of the evidence after subtracting the offending item. As the Sixth Circuit explained: "The *Brecht* test does not say 'only errors that turn acquittals into convictions are harmful.' " As Justice Stevens put it in *Brecht,* "the question is not 'were they [the jurors] right in

their judgment, regardless of the error or its effect upon the verdict. It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision.'" *Kyger v. Carlton,* 146 F.3d 374, 382 (6th Cir.1998) (quoting *Brecht,* 507 U.S. at 642–43, 113 S.Ct. 1710 (Stevens, J., concurring)). "[I]t is improper in a *Brecht* inquiry to focus on the sufficiency of the untainted evidence." *Ibid.* Put another way, if the Court harbors "grave doubt" as to whether the error did sufficiently impact the fairness of the petitioner's trial—that is, when the error is as likely to have affected the verdict as not—the writ of habeas corpus must be granted. *O'Neal v. McAninch,* 513 U.S. 432, 435, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).

■ The magistrate judge did not conduct a harmless error analysis because he found no Confrontation Clause violation had occurred. This Court agrees with the respondent that the error was harmless. First, the confession did not mention the petitioner in any way. All it indicated to the jury was Mark's admission that he had participated in the crime. Second, as the respondent demonstrates at length in his answer to the petition, the evidence of Mark's involvement in the crime was strong even without the confession. Mark's car was seen on the private drive behind the bar even though the parking lot for My Bar was out front and contained ample space for parking. Trial Tr., vol. I, at 53–57, 70–71, 76–79, 83–85; Trial Tr., vol. III, at 399–400, 495–96. The defendant also admitted that he thought he saw Mark's car behind My Bar. Trial Tr., vol. III, at 567–68. Mark's footsteps ran from the location where his car was observed to the back door of the bar, Trial Tr., vol. III, at 381, 384, 397, 441, 493–94, and an unidentified man was seen in the shadows behind My Bar shortly before the attack. *See* Trial Tr., vol. II, at 213. Mark also appeared at My Bar just before the attack, met with the petitioner in the restroom, and then promptly departed. Trial Tr., vol. I, at 135, 150–51. The difference in the severity of wounds between Jeannette and the petitioner was also telling whereas Jeannette's head had been "beaten to a bloody pulp," Answer at 18, the petitioner received a few minor wounds to the back, suggesting that the assailant had good reason to differentiate between the victims. Trial Tr., vol. II, at 242, 319–20.

Third, and most importantly, the evidence of the petitioner's guilt was also considerable. The testimony at trial indicated that the petitioner had a girlfriend and was trying to get rid of Jeannette, but did not want to lose any of his property in a divorce. Trial Tr., vol. I, at 39; Trial Tr., vol. II, at 280. The petitioner's brother Gary testified that the petitioner had raised the topic of "getting rid of" Jeannette and suggested some means by which this might be accomplished. Trial Tr., vol. I, at 40. On the night in question, the petitioner met privately with Mark for five minutes shortly before the attack occurred, and after he had been seen arguing with Jeannette. Trial Tr., vol. I, at 150. The petitioner then conveniently steered Jeannette out a back entrance to "look for firewood" from some crates where an assailant just happened to be waiting, instead of leaving by the front where his vehicle was parked. *See* Trial Tr., vol. 3, at 567. The petitioner returned ten minutes later claiming he had been mugged in a tone that observers found to be oddly detached given what he claimed to have just experienced. Trial Tr., vol. I, at 136, 154, 184. Neither the petitioner nor Jeannette had been robbed, the petitioner's claim of a mugging notwithstanding. Furthermore, medical testimony established at trial that the petitioner's claim he was knocked out by the blows he received was almost certainly false, and that the petitioner did not exhibit any symptoms of a person who had recently been

rendered unconscious. Trial Tr., vol. II, at 303, 333; Trial Tr., vol. III, at 466.

In light of the other evidence at trial convincingly establishing Mark's participation in the crime, the petitioner's motive and opportunity to commit the crime, and the petitioner's plainly incredible account of what had happened when his wife was attacked, the Court does not harbor grave doubt as to whether the jury's verdict would have been different had Mark's confession not been admitted at trial.

### B.

Closely related to the petitioner's first claim, that he was prohibited from cross-examining Mark at all, is his third claim that he was prohibited from introducing another part of Mark's confession. This claim concerns the trial court's ruling that the petitioner would not be permitted to introduce only a portion of Mark's confession (where Mark admitted hitting the petitioner twice on the back that night behind My Bar) without introducing his complete statement (including the allegation that Mark only hit the petitioner because the petitioner asked him to do it as part of the overall plan to get rid of Jeannette).

This claim was first raised in the petitioner's 1991 Motion for Relief from Judgment, and appears to have been denied on the merits, although the trial judge did express concern that the issue had not been raised on direct appeal. It is well settled that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Serra v. Michigan Dep't. of Corr.,* 4 F.3d 1348, 1354 (6th Cir.1993). "Errors by a state

court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow,* 25 F.3d 363, 370 (6th Cir.1994). Although it is true that the defendant is entitled to "a meaningful opportunity to present a complete defense," *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), the State is in turn entitled to require said defense to comply with reasonable trial procedures, *see United States v. Scheffer,* 523 U.S. 303, 308–09, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998).

The Court agrees with the magistrate judge that defense counsel was attempting to put a distorted view of the evidence before the jury. The state court was not obligated to permit defense counsel to introduce selective portions of the confession out of context in a manner confusing to the jury and not representative of the true thrust of Mark's confession. Even if erroneous, such a ruling would be harmless in any event as the State would surely not have ignored defense counsel's attempt to introduce several additional parts of a confession he had only recently tried to suppress in its entirety, and would no doubt have introduced exactly those parts (if not others, as well, with defense counsel having opened the door) that the trial court was insisting the defense produce in the first instance. In fact, the Michigan Rules of Evidence allow an adverse party to introduce the remainder of a statement "which ought in fairness to be considered contemporaneously" with the excerpt. Mich. R. Evid. 106. Given the likely reaction of the jury upon finding out that defense counsel was seeking to mislead them in this manner, if anything, the trial court likely did the defendant a favor in denying counsel's motion in this regard.

The Court finds no error in the Michigan state courts' rejection of this claim.

### C.

■ In his fourth claim, the petitioner asserts that the trial court erred in allowing the State to impeach the petitioner with evidence of prior convictions pursuant to Michigan Rule of Evidence 609 when the petitioner testified in his own defense. The evidence in question consisted of three prior felony convictions for obtaining money under false pretenses. On direct review, the Michigan Court of Appeals found the convictions to be directly probative of the petitioner's honesty and to pose no risk of suggesting that the conduct for which the petitioner was on trial followed naturally from the prior convictions. The magistrate judge found the claim to be unexhausted because it was not fairly presented to the state courts as a federal constitutional claim, and procedurally defaulted pursuant to Michigan Court Rule 6.508 because the petitioner has already filed one post-conviction motion. However, the petitioner's failure to exhaust a claim is no bar to denying that claim on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

■ The Supreme Court has declined to hold that similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *See Dowling v. United States,* 493 U.S. 342, 352–53, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). Such matters are more appropriately addressed in codes of evidence and civil procedure than under the Due Process Clause. *Id.* at 352, 110 S.Ct. 668. Although the Sixth Circuit has suggested that due process is violated whenever the State seeks to introduce evidence that is not rationally connected to the crimes charged, *see Manning v. Rose,* 507 F.2d

889, 894–95 (6th Cir.1974), this rule has no application here where there was a proper evidentiary purpose for the evidence. Since the petitioner testified at trial, the prosecution was entitled to attack his truthfulness with evidence of prior felony convictions. *See Ohler v. United States,* 529 U.S. 753, 764, 120 S.Ct. 1851, 146 L.Ed.2d 826 (2000).

If required to opine on the matter, the Court would conclude that the admission of the petitioner's prior convictions for crimes of dishonesty was probative to his capacity for truthfulness, and were properly admitted for that purpose. *Dowling,* however, makes clear that the Michigan courts' preference in this regard is beyond the scope of this Court's purview. *See also Lisenba v. California,* 314 U.S. 219, 227–28, 62 S.Ct. 280, 86 L.Ed. 166 (1941) ("The Fourteenth Amendment leaves California free to adopt a rule of relevance which the court below holds was applied here in accordance with the State's law.").

The Michigan state courts properly rejected this claim.

### D.

The petitioner's seventh claim is that he was entitled to a cautionary instruction with regard to the introduction of portions of Mark Wenglikowski's confession at trial. The magistrate judge found no basis in Supreme Court jurisprudence for the contention that any defendant was entitled to a cautionary instruction for testimony properly admitted pursuant to applicable hearsay rules and the Confrontation Clause.

■ On habeas review, the question is whether the absence of an instruction so infected the entire trial that the resulting conviction violates due process. *Henderson v. Kibbe,* 431 U.S. 145, 154–155, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977);

*Williams v. Abshire,* 544 F.Supp. 315, 319 (E.D.Mich.1982). To warrant habeas relief, the jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair. *Scott v. Mitchell,* 209 F.3d 854, 882 (6th Cir.2000). The challenged instruction may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial court record. *Grant v. Rivers,* 920 F.Supp. 769, 784 (E.D.Mich.1996). A habeas petitioner's burden of showing prejudice is especially heavy when a petitioner claims that a jury instruction was incomplete, because an omission or an incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Fama v. Comm'r of Corr. Services,* 69 F.Supp.2d 388, 397 (E.D.N.Y.1999), *aff'd,* 235 F.3d 804 (2d Cir. 2000).

▆ The Court agrees that the Michigan courts were not under any federal constitutional obligation to provide a cautionary instruction with regard to the confession of an accomplice. The case cited by the petitioner, *Cool v. United States,* 409 U.S. 100, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972), held that the trial court in that case erroneously gave a cautionary instruction that suggested the jury should not believe the exculpatory testimony of an accomplice unless it found it to be true beyond a reasonable doubt. The Court concluded that the instruction interfered with the defendant's constitutional right to present a defense and had the effect of lowering the prosecution's burden of proof. *Id.* at 100, 102–03, 93 S.Ct. 354.

The Court shares the magistrate judge's bewilderment as to how the holding in *Cool* has anything to do with this case. The petitioner states that *Cool* stands for the proposition that the jury must be "properly instructed," Petition at 33, but such a reading would transform the slightest disagreement over syntax into a federal constitutional issue, and would be inconsistent with the Supreme Court's directive that a jury instruction must infect the entire trial with unfairness before habeas relief is appropriate. *See Scott,* 209 F.3d at 882. The petitioner's gloss on *Cool* also begs the question of what constitutes a properly instructed jury. As subsection (a) of Section 2254 make clear, the jury is only improperly instructed for habeas corpus purposes if the instruction violated the "Constitution, laws, or treaties of the United States." Because the petitioner can point to no provision of the Constitution, federal statutory law, or any treaty compelling state courts to offer cautionary instructions with regard to the use of accomplice confessions by juries, it follows that the jury in this case was not improperly instructed to a degree cognizable on habeas review.

The magistrate judge correctly recommended that this claim be denied.

### E.

▆ The magistrate judge agreed with the respondent that the remaining claims—VI (improper jury instruction), VIII (ineffective assistance of trial counsel for failing to object to said improper jury instruction), and IX (ineffective assistance of appellate counsel for failing to raise Claim VIII on direct appeal)—were procedurally defaulted. All three claims were raised for the first time in the petitioner's second motion for relief from judgment in 1996, which was denied in April 1997 pursuant to Michigan Court Rule 6.508(D)(3) for failure to raise the claims in a prior motion. Both the Michigan Court of Appeals and the Michigan Supreme Court explicitly enforced this default in their orders denying leave to appeal.

In his objections, the petitioner does not deny that his failure to raise these claims

in the earlier post-conviction motion was contrary to Michigan Court Rule 6.508(D)(3), which forbids a trial court from granting a motion that "alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter" in the absence of demonstrated cause and resulting prejudice from the default. Instead, he argues that the Michigan Supreme Court's order in *Ambrose v. Recorder's Court Judge*, 459 Mich. 884, 587 N.W.2d 282 (1998) (Table) created an implicit exception to Rule 6.508(D)(3) when it found that Michigan Court Rule 6.502(G), which bars most successive motions for post-conviction relief, does not bar inmates from filing successive motions if their original motion was filed prior to 1995, the year Rule 6.502 was amended to include this prohibition.

The Court disagrees. *Ambrose* is not a written decision, but a summary order. The Order merely indicates that the successive-motion provision of Rule 6.502(G) should not be applied to bar prisoners from filing additional motions when their original motion or motions were filed at a time that no such bar existed. *Ambrose* never mentions Rule 6.508, nor is it plausible that the Michigan Supreme Court would carve out an exception to a rule that had been in effect since 1989. The petitioner suggests that *Ambrose's* grant of relief under Rule 6.502(G) is illusory if the requirements of Rule 6.508(D) are not similarly relaxed, but this is simply not correct. Even if a prior post-conviction motion had been filed, Rule 6.508 does not bar successive motions that challenge the jurisdiction of the court that entered the movant's conviction, or for which the movant can demonstrate good cause for failing to raise the argument in an earlier motion and prejudice that would inure to the movant if the motion is not granted, or if the movant can credibly demonstrate he is ac-

tually innocent of the crime or crimes for which he was convicted. *See* Mich. Ct. R. 6.508(D)(3). There is nothing absurd or puzzling about the Michigan Supreme Court electing to relax Rule 6.502(G) to permit this limited category of claims to be raised.

The petition also alleged as a separate "claim" (Claim X) that Rule 6.508 was not an independent and adequate ground on which to base a procedural default, but has abandoned this argument in his objections.

The Court agrees with the magistrate judge's finding that Rule 6.508(D)(3) bars Claims VI, VIII, and IX, and will overrule the petitioner's objections in this regard.

## IV.

Claims II through X of the petition are either procedurally defaulted or lack merit. The petitioner has established in Claim I to the Court's satisfaction that the Michigan courts erred in finding no violation of the Confrontation Clause, but the Court finds the erroneous admission of Mark's confession to have been harmless error. As a result, the Court cannot conclude that the Michigan courts' denial of relief to this petition was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d).

Accordingly, it is **ORDERED** that the Report is **ADOPTED IN PART.**

It is further **ORDERED** that the Recommendation of dismissal is **ADOPTED** and that the petition for a writ of habeas corpus is **DENIED.**