## COOL *v.* UNITED STATES

No. 72–72.   Decided December 4, 1972

Per Curiam.

The petition for a writ of certiorari is granted.

In this case, the court below held in effect that in a criminal trial, the jury may be instructed to ignore defense testimony unless it believes beyond a reasonable doubt that the testimony is true.   That holding is fundamentally inconsistent with our prior decisions in *In re Winship*, 397 U. S. 358 (1970), and *Washington* v. *Texas*, 388 U. S. 14 (1967), and must therefore be reversed.

After a jury trial, petitioner was found guilty of possessing and concealing, with intent to defraud, counterfeit obligations of the United States.   The evidence showed that on June 2, 1970, petitioner, her husband, and one Robert E. Voyles were traveling together by car between St. Louis, Missouri, and Brazil, Indiana.   Upon reaching Brazil, Voyles left petitioner and her husband and passed two counterfeit bills at a local store.   He was then arrested shortly after he entered the car in which petitioner and her husband were waiting.

After his arrest, Voyles was placed in the police car and taken to the station house.   Petitioner and her hus-

band were told to follow in their own car. A Mr. Baumunk testified that he saw petitioner throw a paper sack out of the car window as petitioner was following the police car. The bag was subsequently found to contain counterfeit bills. Police also found three counterfeit bills crumpled up under the right seat of petitioner's car.

Although petitioner testified in her own defense, she relied primarily on the testimony of Voyles. Voyles freely admitted his own guilt,[1] but steadfastly insisted that neither petitioner nor her husband had anything to do with the crime. He testified that petitioner had merely agreed to give him a ride and knew nothing about the counterfeit bills that he carried with him. When the car stopped in Brazil, Voyles allegedly removed some of the counterfeit bills from his satchel which he kept in petitioner's trunk, and concealed the rest of the bills in a sack which he placed under the front bumper by the headlight. The defense argued that it was this sack that Baumunk saw fall to the ground as petitioner drove to the police station. Voyles also stated that after he had rejoined petitioner, he saw police approaching the car and threw the remaining bills on his person onto the car floor, again without the knowledge of petitioner. Petitioner thus asserts that she was not in knowing possession of the bills on the car floor.

With the case in this posture, the Government's position clearly depended upon its ability to discredit Voyles, since his testimony was completely exculpatory. Over strenuous defense objection,[2] the trial judge gave the jury

---

[1] At the time of his testimony, Voyles had already pleaded guilty to a charge of complicity in the possession and concealment of counterfeit notes.

[2] The dissent suggests that the defendant objected to the accomplice instruction solely on the ground that use of the word "accomplice" suggested that the defendant was guilty. Although the defense objection was not a model of clarity, it seems apparent that it was grounded more broadly on the trial judge's decision to give the stand-

a lengthy "accomplice instruction" to be used in evaluating Voyles' testimony. After first defining the word "accomplice" and warning that an accomplice's testimony is "open to suspicion," the judge made the following statement: "However, I charge you that the testimony of an accomplice is competent evidence and it is for you to pass upon the credibility thereof. If the testimony carries conviction and you are convinced it is true *beyond a reasonable doubt,* the jury should give it the same effect as you would to a witness not in any respect implicated in the alleged crime and you are not only justified, but it is your duty, not to throw this testimony out because it comes from a tainted source." (Emphasis added.)

The clear implication of this instruction was that the jury should disregard Voyles' testimony unless it was "convinced it is true beyond a reasonable doubt." [3] Such

---

ard accomplice instruction despite the fact that the accomplice was a defense witness. The defense attorney stated: "I take exception to Instruction No. 16, as it's misleading. *I don't think it belongs in this cause. There was no accomplice testified [sic] for the Government,* and this could mislead them as to the person who was accused of this crime and has already pled guilty, as making an accomplice of him, when actually he is not an accomplice, because they are not involved in the crime." (Emphasis added.) Certainly, the trial judge understood this objection to be directed to his decision to give the standard cautionary instruction even though the alleged accomplice was called by the defendant. In colloquy with the defense attorney, the judge stated: "The next, 'accomplice,' the evidence of both the Government and the defendants may be considered by the jury in determining the guilt or innocence, *no matter who produces the witness.* . . . Now there's a lot of inferences can be drawn from one item of evidence or another, and that's for the jury to decide. So long as there is some evidence, the instruction must be given. *It hits both ways on that point."* (Emphasis added.) Nor did the Court of Appeals indicate any doubt that defendant's objection was sufficient to preserve the point on appeal.

[3] True, the instruction was couched in positive terms. It told the jury to *consider* the evidence if it believed it true beyond a reason-

an instruction places an improper burden on the defense and allows the jury to convict despite its failure to find guilt beyond a reasonable doubt.[4]

Accomplice instructions have long been in use and have been repeatedly approved. See, *e. g., Holmgren* v. *United States,* 217 U. S. 509, 523–524 (1910). In most instances, they represent no more than a commonsense recognition that an accomplice may have a special interest in testifying, thus casting doubt upon his veracity. See, *e. g., Crawford* v. *United States,* 212 U. S. 183, 204 (1909). But in most of the recorded cases, the instruction has been used when the accomplice turned State's evidence and testified against the defendant. See generally *McMillen* v. *United States,* 386 F. 2d 29 (CA1 1967), and cases cited therein. No constitutional problem is posed when the judge instructs a jury to receive the prosecution's accomplice testimony "with care and caution." See, *e. g., United States* v. *George,* 319 F. 2d 77, 80 (CA6 1963). Cf. *United States* v. *Nolte,* 440 F. 2d 1124 (CA5 1971).

---

able doubt. But the statement contained a negative pregnant as well. There is an unacceptable risk that jurors might have thought they were to reject the evidence—"throw [it] out," in the words of the trial judge—if they had a reasonable doubt as to its veracity.

[4] In the next paragraph of his instruction, the judge stated: "I further instruct you that testimony of an accomplice may alone and uncorroborated support your verdict of guilty of the charges in the Indictment if believed by you to prove beyond a reasonable doubt the essential elements of the charges in the Indictment against the defendants." In light of the fact that the only accomplice testimony in the case was exculpatory, this instruction was confusing to say the least. But even if it is assumed that Voyles' testimony was to some extent inculpatory, the instruction was still fundamentally unfair in that it told the jury that it could convict solely on the basis of accomplice testimony without telling it that it could acquit on this basis. Even had there been no other error, the conviction would have to be reversed on the basis of this instruction alone.

But there is an essential difference between instructing a jury on the care with which it should scrutinize certain evidence in determining how much weight to accord it and instructing a jury, as the judge did here, that as a predicate to the consideration of certain evidence, it must find it true beyond a reasonable doubt.

In *Washington* v. *Texas, supra,* we held that a criminal defendant has a Sixth Amendment right to present to the jury exculpatory testimony of an accomplice. The instruction given below impermissibly obstructs the exercise of that right by totally excluding relevant evidence unless the jury makes a preliminary determination that it is extremely reliable.

Moreover, the instruction also has the effect of substantially reducing the Government's burden of proof. We held in *In re Winship, supra,* that the Constitution requires proof of guilt beyond a reasonable doubt. It is possible that Voyles' testimony would have created a reasonable doubt in the minds of the jury, but that it was not considered because the testimony itself was not believable beyond a reasonable doubt. By creating an artificial barrier to the consideration of relevant defense testimony putatively credible by a preponderance of the evidence, the trial judge reduced the level of proof necessary for the Government to carry its burden. Indeed, where, as here, the defendant's case rests almost entirely on accomplice testimony, the effect of the judge's instructions is to require the defendant to establish his *innocence* beyond a reasonable doubt.

Because such a requirement is plainly inconsistent with the constitutionally rooted presumption of innocence, the conviction must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

Mr. Justice Rehnquist, with whom The Chief Justice and Mr. Justice Blackmun concur, dissenting.

I believe that the Court's fine-spun parsing of the trial judge's charge to the jury turns the appellate review of this case into the sort of "quest for error" which was said in *Bihn* v. *United States,* 328 U. S. 633, 638 (1946), to be forbidden by Rule 52 (a) of the Federal Rules of Criminal Procedure,[1] and by 28 U. S. C. § 2111.[2]

The testimony of the witness Voyles, called by petitioner as a witness in her behalf, presented the trial judge with something of a dilemma in determining how he should charge the jury. Much of Voyles' testimony tended to exculpate petitioner, but there were significant aspects of it that did not. He substantiated the fact that the petitioner and her husband[3] had traveled with him from St. Louis to Brazil, Indiana. He corroborated prosecution evidence that both petitioner and her husband gave the same false last name of Gibbs when booked at the police station in Brazil. He also suggested a closeness to petitioner's husband which was scarcely helpful to their defense when he testified that "I was a little sore at Mike [petitioner's husband], because I thought Mike should help me [get out on bond]."

The trial judge made clear in his colloquy with counsel, while dealing with their objections to the charge, that he

---

[1] "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Fed. Rule Crim. Proc. 52 (a).

[2] "On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." 28 U. S. C. § 2111.

[3] The petitioner and her husband were tried and convicted together on the counterfeiting charges. Both appealed their convictions to the Seventh Circuit, which affirmed both. Petitioner's husband has not sought certiorari to have his conviction reviewed.

was concerned about the ambivalence of Voyles' testimony and felt it necessary to give the charge relating to accomplices. Petitioner's counsel in objecting to that portion of the charge did so on a quite different ground from that now sustained by the Court; the ground of objection stated to the trial court was apparently that the mention of the term "accomplice" to the jury suggested that petitioner and her husband were in fact guilty. Such a ground of objection was wholly without merit, since, as the Court of Appeals pointed out in its opinion in this case, the instruction left it entirely to the jury to determine whether or not the facts existed that would make Voyles an accomplice.

The trial court gave 36 separate instructions to the jury, which covered some 52 pages of the transcript in this case. The instruction in question covers two pages, and the Court reverses the conviction on the basis of one sentence in that one instruction. The trial judge repeatedly emphasized to the jury that the Government was obligated to prove guilt beyond a reasonable doubt. Typical is the following statement, which is repeated throughout the instructions in at least half a dozen places:

> "The entire burden of proof is upon the Government from the beginning to the end of the trial and this burden of proof never shifts from the Government to the defendants, and the defendants are not bound to prove their innocence, offer any excuse, or explain anything . . . ."

The record before us does not indicate that either counsel so much as mentioned the accomplice instruction in his argument to the jury. Nonetheless, the Court concludes that because the instruction contained a "negative pregnant" that could be taken to mean that the jurors should reject Voyles' testimony if they had a reasonable

doubt as to its veracity, the conviction is to be reversed.

I had thought the day long past when even appellate courts of the first instance, such as the Court of Appeals in this case, parsed instructions and engaged in nice semantic distinctions in the absence of any showing that would satisfy an ordinary lawyer or layman that substantial rights of one of the parties had been prejudiced by the supposed error. If the nuance of the instruction upon which reversal is now based did not suggest itself to petitioner's trial counsel, it seems doubtful that it suggested itself to the jury either:

> "A party must make every reasonable effort to secure from the trial court correct rulings or such at least as are satisfactory to him before he will be permitted to ask any review by the appellate tribunal; and to that end he must be distinct and specific in his objections and exceptions. . . . '. . . [J]ustice itself and fairness to the court which makes the rulings complained of, require that the attention of that court shall be specifically called to the precise point to which exception is taken, that it may have an opportunity to reconsider the matter and remove the ground of exception.' " *Allis* v. *United States,* 155 U. S. 117, 122 (1894), quoting *Harvey* v. *Tyler,* 2 Wall. 328, 339 (1865).

Nor, as pointed out above, did this particular instruction of the trial court stand alone; it was incorporated into a series of instructions that had as their predominant theme that the burden of proof was upon the Government at every stage to prove guilt beyond a reasonable doubt. The trial court's instructions are to be taken as a whole, and even if an isolated passage might be error if standing by itself, that alone is not a sufficient ground

for reversal. *Boyd* v. *United States,* 271 U. S. 104, 107 (1926).

The Court's reversal on the ground that one of the instructions contained a "negative pregnant" smacks more of the scholastic jurisprudence whose shortcomings led to the enactment of 28 U. S. C. § 2111 than it does of the commonsense approach to appellate review that that section mandates.