UNITED STATES of America, Plaintiff–Appellee,

v.

Marcel TRAVERS, aka Seal C, Defendant–Appellant.

United States of America, Plaintiff–Appellee,

v.

Louis Ramirez, III, aka Seal F Defendant–Appellant.

Nos. 03–50127, 03–50131.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 4, 2003.

Decided Sept. 27, 2004.

---

Ellyn M. Lindsay, Esq., Office of the U.S. Attorney, Los Angeles, CA, for Plaintiff–Appellee.

Office of the U.S. Attorney, Roger S. Hanson, Esq., Santa Ana, CA, William J. Kopeny, Esq., William J. Kopeny & Associates, Irvine, CA, for Defendant–Appellant.

Before: PREGERSON, COWEN,* and W. FLETCHER, Circuit Judges.

AMENDED MEMORANDUM **

### I. Introduction

Louis Ramirez III and Marcel Travers appeal their convictions and sentences for

---

* The Honorable Robert E. Cowen, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. The underlying scheme for which they were convicted involved a telemarketing firm, Medco (formerly DataMed), that the government alleged defrauded would-be purchasers of medical billing software by falsely promising customers that it could put them in contact with doctors who required medical billing services. In reality, the evidence at trial reflected that customers were provided with a generic list of doctors in their state, none of whom were interested in hiring medical billers. Travers and Ramirez were telemarketers for Medco.

A number of legal errors are alleged. Travers argues that the district court erred (1) in denying his request for a continuance, (2) overruling objections to the government's rebuttal argument, and (3) failing to specifically instruct the jury on the defenses of "good faith" and "advice of counsel." Travers joins Ramirez in arguing that the district court erred by (1) admitting documentary evidence that was hearsay, (2) failing to instruct the jury that, in order to convict, it had to unanimously agree that each defendant made a particular false statement or promise in connection with the scheme to defraud, (3) instructing the jury that the testimony of two government witnesses was to be viewed "with great caution," and (4) enhancing defendants' sentences under the United States Sentencing Guidelines for a theft in excess of $1,500,000. Ramirez additionally argues that the evidence was insufficient to support his conviction beyond a reasonable doubt as to his intent to defraud. Because we find no merit to any of the claimed errors, we affirm the judgment of the district court.

## II. Discussion

### A. Denial of Continuance

■ Travers first argues that the district court's denial of his final motion for a continuance, made one month before trial—almost seven months after his counsel first entered an appearance in the case— violated his right to effective assistance of counsel and deprived him of a fair trial. He also argues that the district court improperly considered its own calendar in ruling on the motion.

We review the denial of a motion for continuance for abuse of discretion. *United States v. Garrett*, 179 F.3d 1143, 1144–45 (9th Cir.1999). In so doing, we consider five factors: "(1) the extent of the defendant's diligence in readying the defense; (2) the likelihood that the continuance would have satisfied the defendant's need; (3) the inconvenience to the court, opposing party, and witnesses; [ ] (4) the extent to which the defendant may have been harmed[; and (5) whether] the denial resulted in actual prejudice to [the] defense." *United States v. Nguyen*, 88 F.3d 812, 819 (9th Cir.1996). Although the district court must consider the effect of its decision to deny a continuance upon a defendant's Sixth Amendment right to counsel where the motion "arguably implicates" that right, it need not find a "compelling" reason before denying the continuance. *Garrett*, 179 F.3d at 1145, 1147.

Although Travers argues that his second attorney was diligent in preparing his case since his appointment in February 2002, he makes no showing of the extent of counsel's preparation other than the counsel's statement that he had reviewed the file of Travers' former counsel. Much of Travers' argument for a continuance focused on the fact that other counsel in the case had gotten the benefit of longer preparation time due to the case having been continued numerous times. The district court could not say Travers' trial counsel had demonstrated total diligence due to

the lapse in time, and nothing in the record contradicts this finding.

We agree that the district court appropriately considered the inconvenience to government witnesses as well as its own calendar in denying the continuance. It considered the age of the case, the difficulties a continuance would present to its own calendar, and the fact that the government was assembling witnesses from across the United States. Finally, although Travers alleges that the continuance would have satisfied his need and that he was generally harmed by the denial, he has not provided any specific explanation of how he was prejudiced. On the contrary, the district court's denial of the motion was far from being an "unreasoning and arbitrary" decision in the face of a justifiable request for delay. *See id.* at 1145 (quoting *Morris v. Slappy,* 461 U.S. 1, 11–12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) (internal citations omitted)). We find no abuse of discretion.

### B. Overruled Objections to Government's Rebuttal Argument

■ Travers argues that the government's rebuttal argument, in which the government characterized various defense arguments as "smoke screens," violated his right to a fair trial. He maintains that the district court erred in overruling his objections to the government's argument and in denying his subsequent motion for a mistrial. We find that the district court did not err.

We review for abuse of discretion a district court's rulings on objections to alleged prosecutorial misconduct. *United States v. Sarkisian,* 197 F.3d 966, 988 (9th Cir.1999). When a prosecutor's arguments are non-prejudicial, or constitute reasonable inferences from the evidence, no prosecutorial misconduct has been demonstrated. *United States v. Patel,* 762 F.2d 784,

795 (9th Cir.1985). Counsel may attack opposing counsel's arguments with impunity, so long as they do not engage in personal attacks directed at opposing counsel themselves. *See Williams v. Borg,* 139 F.3d 737, 745 (9th Cir.1998) ("A lawyer is entitled to characterize an argument with an epithet as well as a rebuttal.").

From the record it is clear that the government's rebuttal was an attack on the arguments and strategy of defense counsel rather than an *ad hominem* attack on defense counsel themselves. The government used the "smoke screen" trope to attack the defense's strategy of presenting the jury with what the government believed were irrelevant arguments, such as the argument that the prosecution's case was weak because more culpable parties had testified as witnesses pursuant to plea-bargains. None of the arguments made by the government suggested that defense counsel were dishonest or unethical; rather, the implication that defense counsel were "showmen" who were setting up "smoke screens" was directed specifically to defense counsel's trial strategy. The district court correctly concluded that these characterizations were "fair argument to be drawn from the evidence and the arguments." The district court did not abuse its discretion in overruling Travers' objections to argument by the government.

### C. Failure to Instruct Jury on "Good Faith" and "Advice of Counsel" Defenses

■ Travers contends that the district court erred in rejecting two of his proposed jury instructions. First, he argues that the court improperly denied his proposed "good faith" instruction, which would have explicitly stated that, because it is inconsistent with an intent to defraud, a defendant's good faith is a complete defense to a charge of mail or wire fraud.

Second, he argues that the court improperly denied his proposed "advice of counsel" instruction, which requires a jury to consider whether a defendant's action in seeking and obtaining advice from a lawyer demonstrates a lack of fraudulent intent on the part of that defendant.

We have squarely held that failure to instruct on a "good faith" defense is not fatal so long as the jury is clearly instructed as to the necessity of specific intent as an element of the crime. *United States v. Sarno,* 73 F.3d 1470, 1487 (9th Cir.1995). In Travers' case, the judge issued an instruction explaining to the jury that to find Travers guilty, it had to find that he "acted with the intent to defraud," explaining "intent to defraud" as "an intent to deceive or cheat." Travers does not challenge the adequacy of the district court's instructions as to intent. Accordingly, the district court did not err in failing to issue a separate "good faith" instruction.

■ To qualify for an "advice of counsel" instruction, a defendant must show that he made full disclosure to an attorney of all material facts, and that he relied in good faith on a specific course of conduct recommended by the attorney. *United States v. Ibarra–Alcarez,* 830 F.2d 968, 973 (9th Cir.1987). Although Travers' testimony established that he had "been introduced" to the lawyer who had allegedly approved the legality of the script Travers used in making telephone sales to Medco customers, the testimony did not establish that Travers ever discussed the legality of the script with the lawyer himself. Rather, Travers testified that a Medco supervisor represented that the attorney had approved the script. Because the evidence at trial did not establish that Travers had ever affirmatively sought the advice of counsel with regard to the script, the district court appropriately ruled that he was not entitled to the "advice of counsel" instruction. *See United States v. Munoz,* 233 F.3d 1117, 1132 (9th Cir.2000) (defendant was not entitled to an "advice of counsel" instruction where he relied on the opinion letters of two attorneys because, among other things, he had never independently consulted either attorney).

### D. Admission of Customer Complaint Letters

Ramirez's first argument, in which Travers joins, is that the district court erred in overruling defendants' Confrontation Clause and hearsay objections to customer complaint letters received by Medco, their employer. The letters were introduced into evidence by the government. Ramirez and Travers further argue that the complaint letters constituted prejudicial "other acts" under Fed.R.Evid. 404(b), and were only disclosed to defendants after the beginning of the trial. We review *de novo* alleged violations of the Confrontation Clause. *United States v. Aguilar,* 295 F.3d 1018, 1020 (9th Cir.2002). We review a district court's admission of evidence under exceptions to the hearsay rule for abuse of discretion. *United States v. Hernandez–Herrera,* 273 F.3d 1213, 1217 (9th Cir.2001).

Fed.R.Evid. 803(6), the business records exception to the hearsay rule, permits the introduction of hearsay documents that (1) were made or transmitted by a person with knowledge at or near the time of the incident recorded, and (2) were kept in the course of a regularly conducted business activity. *United States v. Ray,* 930 F.2d 1368, 1370 (9th Cir.1990). Records need not actually be prepared by the business to constitute business records, so long as they are received, maintained, and relied upon in the ordinary course of business. *United States v. Childs,* 5 F.3d 1328, 1333 (9th Cir.1993).

Here, the testimony of Donna Rodig, an employee of Medco who dealt with "hundreds" of similar complaint letters against Medco, supported the admission of Medco's records regarding the complaint letters. Her testimony does not, however, support the admission of the letters themselves. *See United States v. Baker*, 693 F.2d 183 (D.C.Cir.1982) (holding that forms completed by intended payees of missing government-issued checks were inadmissible under the business records exception because payees who completed the forms were not acting within the regular course of business). Nevertheless, assuming that the complaint letters should not have been admitted into evidence and shown to the jury, we find that any error was harmless beyond a reasonable doubt given the otherwise overwhelming evidence of defendants' guilt. *See id.* at 188 ("Although admission of the claim forms was error, it was merely harmless error."). We further find that the letters' admission did not offend the Confrontation Clause because they do not constitute "testimonial" evidence as articulated by the Supreme Court in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004) ("[A]t a minimum, ['testimony' applies] to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."). Nor were the complaint letters "other acts" evidence under Fed.R.Evid. 404(b). They involved the same scheme that the government was trying to prove. *See* Fed.R.Evid. 404(b). Finally, delayed disclosure of documents only necessitates a mistrial where the defendant is prejudiced by the delay. *See United States v. Dupuy*, 760 F.2d 1492, 1497 (9th Cir.1985). Ramirez and Travers allege no prejudice from the delayed disclosure. The district court did not err in admitting the complaint letters.

### E. Requirement that Jury Agree on Specific False Act or Statement

Ramirez and Travers contend that the district court erred because it did not instruct the jury that it had to unanimously agree on the particular false statement or statements found to constitute an element of the wire and mail fraud offenses. However, although Ramirez made a general request for instructions specifying the elements of mail and wire fraud, neither defendant requested an instruction requiring the jury to agree on a particular false statement or promise made as an element of the offense. We review for plain error challenges to jury instructions to which a defendant failed to object at trial. *United States v. Smith*, 282 F.3d 758, 765 (9th Cir.2002). Jury instructions are non-reviewable under the invited error doctrine if the defendant requested the instructions, unless neither party was aware of the error, in which case plain error review applies. *United States v. Burt*, 143 F.3d 1215, 1217–18 (9th Cir.1998).

The invited error doctrine bars appellants' argument as to Ramirez, because he proposed the very instruction to which he now objects. In any event, however, the claim is meritless with regard to both Ramirez and Travers. In *United States v. Rude*, 88 F.3d 1538 (9th Cir.1996), we approved an instruction similar to the ones in this case. The jury in that case was instructed that, in order to convict the defendant, it had to find that "the defendant made up a scheme or plan to defraud ... and to obtain money from the investors by means of false promises or statements, *with all of you agreeing on at least one particular false promise or statement that was made.*" 88 F.3d at 1547 (emphasis in original). We held that the instruction properly required "a unanimous finding concerning the existence of the underlying false statements" in the fraud scheme. *Id.*

In this case the jury was instructed that, in order to convict defendants on mail and wire fraud, it was required to find that defendants "knowingly made up, executed or participated in a scheme or plan to obtain money or property, by making false statements or promises with all of you [the jury] agreeing on at least one particular false promise or statement that was made." The instruction is consistent with *Rude*. The district court did not plainly err in instructing the jury.

### F. Instruction to View Testimony of Government Witnesses "With Caution"

Ramirez and Travers next argue that the district court erred in instructing the jury that the testimony of Jason Wilkey and Deborah Leight, two government witnesses who had testified pursuant to plea agreements, was to be considered "with great caution." As this jury instruction was not objected to at trial, our review is limited to plain error. *Smith*, 282 F.3d at 765.

In *Cool v. United States*, 409 U.S. 100, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972), the Supreme Court reversed a conviction because it found that the trial judge had improperly instructed the jury to disregard the testimony of a defense accomplice witness *unless* it was convinced beyond a reasonable doubt as to that witness's credibility. *See id.* at 102. The instruction placed an improper burden on the defense and relieved the government of its obligation to prove guilt beyond a reasonable doubt. The Supreme Court held that the instruction was "plainly inconsistent with the constitutionally rooted presumption of innocence." *Id.* at 102–04. The Court explicitly stated, however, that "[n]o con-stitutional problem is posed when the judge instructs a jury to receive the prosecution's accomplice testimony 'with care and caution.'" *Id.* at 103.

■ Unlike in *Cool*, the instruction given here did not shift the burden of proof by directing jurors to discount witness testimony unless they found it credible beyond a reasonable doubt. Indeed, although appellants complain that the district court's instruction operated to deprive them of the salutary impact of corroborative testimony, the instruction was clearly intended to caution jurors with regard to the adequacy of the *government's* case. Ramirez and Travers have failed to show that the district court plainly erred in delivering the instruction.

### G. Sentence Enhancement

■ Ramirez and Travers argue that the district court erred by failing to make specific findings, by clear and convincing evidence, as to the loss attributable to each of them, which resulted in twelve-level enhancements for both under the United States Sentencing Guidelines. Through counsel, both Ramirez and Travers stipulated to a loss amount substantially more than the amount which the court found attributable to them.[1] But, as things turned out, defense counsel, with the concurrence of the Assistant U.S. Attorney, stipulated to that loss amount before the Supreme Court held in *Blakely v. Washington*, that "any fact [other than the fact of a prior conviction] that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." —— U.S. ——, 124 S.Ct. 2531, 2536, 159 L.Ed.2d 403 (2004). In light of

---

1. Any position by Ramirez or Travers that the loss amount was improperly stipulated would be more appropriately dealt with in an appli-cation pursuant to 28 U.S.C. § 2255. We take no position as to the merits of any such application.

*Blakely,* the district court must reconsider this issue as if the slate had been wiped clean.

### H. Existence of Sufficient Evidence to Support the Verdict

Ramirez argues that the evidence did not demonstrate that he knew of or intended to participate in the fraudulent scheme at issue. In considering a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the government to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hernandez–Herrera,* 273 F.3d at 1218. We conclude that substantial evidence supported the jury's verdict as to Ramirez's intent to defraud.

The script used by Ramirez and other telemarketers at Medco included misrepresentations about checking the availability of doctors in the victim's region, a dwindling number of "spots," selectivity in choosing customers by Medco, the medical community monitoring Medco's phone calls, and the percentage of Medco's business coming from referrals. A jury could reasonably infer that Ramirez knew these representations were materially false based upon his own experience at Medco.

In addition, victim testimony established that Ramirez engaged in misrepresentations beyond those in the script, such as statements that doctors had signed up with Medco, Medco would send claims directly to customers, and doctors were waiting to be solicited. Finally, the testimony of Jason Wilkey established that telemarketers knowingly referred victims to the "fraud phone," which purported to verify the legitimacy of the operation for customers but was actually run by Medco employees pretending to be members of a "watch-dog" organization. Wilkey also described how telemarketers posed as satisfied customers, and lied to victims about running background checks on them.

Based on these facts, a rational jury could have found beyond a reasonable doubt that Ramirez acted with intent to defraud when he placed telemarketing phone calls on behalf of Medco. Substantial evidence supported the jury's verdict.

### III. Conclusion

For the reasons discussed above, Ramirez's and Travers's convictions are AFFIRMED. We REMAND to the district court for reconsideration of appellants' sentences in light of *Blakely.* We DENY appellants' motion seeking bail pending resentencing without prejudice to any district court ruling on a comparable motion.