Filed 6/19/13  P. v. Reil CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G046956 |
| v. | (Super. Ct. No. 10CF2458) |
| ROBERT LUIS REIL, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Daniel McNerney, Judge.  Affirmed.

Christopher Nalls, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Annie Featherman Fraser, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted defendant Robert Luis Reil of conspiracy to commit robbery, count 1 (Pen. Code, §§ 182, subd. (a)(1), 211; all further statutory references are to the Penal Code), murder with special circumstance that murder was committed during an attempted robbery, count 2 (§§ 187, 190.2, subd. (a)(17)(A)), and participation in a criminal street gang, count 3 (§ 186.22, subd. (a)). They also found firearm enhancements (§ 12022.53, subds. (d), (e)(1)) and gang enhancements (§ 186.22, subd. (b)). The information also alleged a strike prior (§ 667, subds. (b)-(i), a serious felony prior (§ 667, subd. (a)(1)), and three prison prior enhancements (§ 667.5, subd. (b)). The prior conviction allegations were dismissed. The court sentenced defendant to 25 years to life on count 2, 25 years to life for the gun enhancement for a total of 50 years to life. The court stayed sentence on counts 1 and 3 and the gang enhancement on count 2 under section 654.

In his appeal defendant contends insufficient evidence supports the conspiracy to commit robbery or the murder count. He also contends the court erred by instructing the jury that the testimony of his girlfriend required supporting evidence and in failing to instruct on involuntary manslaughter. The evidence was sufficient and there was no instructional error. We therefore affirm the judgment.

FACTS

The crimes were committed after a multi-day methamphetamine fueled party attended by defendant, a member of the Orange Varrio Cypress (OVC) street gang, and other members of the same gang: Joseph Baez and Christian Galindo. Also present was defendant's girlfriend, Amour Villamar, as well as others. After some time the partiers ran out of methamphetamine. Villamar had been buying drugs from Ezekial Felix Bernal; she called him and asked to buy an "eight ball," which would normally cost $200. She did have $80 that she owed to someone else and of which defendant was not

2

aware. She testified she told Bernal she only had $80 and that he agreed she could owe him for the balance. None of the others had any money. Baez told his girlfriend Tanya Dominguez they were going "to come up on something," which meant they were going to steal the drugs. Others were present when this statement was made but Dominguez did not recall who.

Rather than tell Bernal where the drugs should be delivered, when Bernal called after exiting the freeway, defendant directed Villamar to tell him to go to a location some blocks away. Meanwhile, Galindo, Villamar, Baez, and defendant drove to this location. Baez and defendant both carried guns. When Bernal arrived, Villamar told him to pull into a driveway. While Bernal's vehicle was still moving slowly, Baez shot at the window of Bernal's vehicle. Baez then stated "'what's up homey'" and then fired another shot, killing Bernal.

Once Villamar returned to the car where defendant apparently had remained, he asked her where the drugs were. When told she did not get any, he hit the headrest and said "'this was all for nothing.'" He cursed at Baez, calling him a "'punk ass mother fucker.'" Defendant later sold his gun to pay for a motel room and, after a few days, obtained money from his grandmother which he used to go to Oregon with Villamar.

## DISCUSSION

*1. There was Sufficient Evidence to Support the Conspiracy to Commit Robbery*

Defendant structures his argument regarding the alleged lack of sufficient evidence by drawing favorable inferences from the facts. This is not a method to be used to determine sufficiency of the evidence. We start with the facts: defendant needed methamphetamine; he did not have money to buy any; his girlfriend had some money which she testified he did not know about; the money she had was insufficient to pay for

3

the quantity of methamphetamine they ordered; they did not give the dealer the address where they were located but sent him to a location some blocks away; they arrived armed with guns; and they were all members of the same criminal street gang. From these facts one might infer that Baez's shooting of Bernal was totally unexpected. But it is at least as reasonable to infer the three gang members intended to rob Bernal of the drugs he was carrying.

In reviewing a sufficiency of the evidence claim, we do not reweigh the evidence or assess the credibility of witnesses (*People v. Albillar* (2010) 51 Cal.4th 47, 60), but examine the entire record and draw all reasonable inferences from the record in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt (*People v. Streeter* (2012) 54 Cal.4th 205, 241).

A conspiracy is an agreement by two or more persons to commit an offense with the specific intent to commit the elements of the offense, coupled with an overt act by one or more of the conspirators in furtherance of the conspiracy. (*People v. Jurado* (2006) 38 Cal.4th 72, 120.) "To prove an agreement, it is not necessary to establish the parties met and expressly agreed; rather, 'a criminal conspiracy may be shown by direct or circumstantial evidence that the parties positively or tacitly came to a mutual understanding to accomplish the act and unlawful design.'" (*People v. Vu* (2006) 143 Cal.App.4th 1009, 1025.) "While mere association does not prove a criminal conspiracy [citation], common gang membership may be part of circumstantial evidence supporting the inference of a conspiracy." (*People v. Superior Court (Quinteros)* (1993) 13 Cal.App.4th 12, 20.) Thus, "'a conspiracy may be inferred from the conduct, relationship, interests, and activities of the alleged conspirators before and during the alleged conspiracy.'" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1135.)

"The choice of which inference is to be drawn from the facts, where more than one reasonable inference is possible, is the function of the jury. [Citation.] 'It is not

4

the province of the reviewing court to overturn the jury's verdict when it is supported by substantial evidence including the reasonable inferences to be drawn therefrom.' [Citation.]" (*People v. Sweeney* (1960) 55 Cal.2d 27, 51.)

*2. There was Sufficient Evidence to Support the Murder Count*

Because this case was submitted to the jury under the felony murder rule, the evidence of conspiracy to commit robbery would have to be sufficient to sustain the murder count. Defendant argues that, because the evidence was insufficient to support the conviction on the conspiracy to commit robbery, the conviction on the murder count necessarily falls. But, as we explained above, there was sufficient evidence to support the conspiracy to commit the robbery count. Hence, because the murder occurred in the course of the attempted robbery, there was sufficient evidence to support that count.

*3. The Trial Court did not err in Instructing the Jury That the Testimony of Defendant's Girlfriend Required Supporting Evidence*

Because Villamar, who was a witness called by the prosecution, was an accomplice to the murder, the court instructed the jury that supporting evidence would be required to prove any fact testified to by her. Defendant contends that, although Villamar was called as a prosecution witness, he intended to rely on some of her testimony in his defense. The instruction is required to be given where an accomplice testifies for the prosecution.

The court properly instructed the jury on Villamar's status as a potential accomplice. It read to the jury CALCRIM No. 334. Initially, the instruction stated, "[b]efore you may consider the statement or testimony of Amour Villamar as evidence *against* the defendant regarding the crimes, you must decide whether Amour Villamar was an accomplice to those crimes." (Italics added.) After defining the term accomplice and describing what the jury must find to conclude Villamar qualified as such, the

5

instruction continued as follows: "If you decide that a witness was not an accomplice, supporting evidence is not required and you should evaluate her statement or testimony as you would that of any other witness. [¶] If you decide that a witness was an accomplice, *you may not convict the defendant of the charged crimes* based on her statement or testimony alone. You may use the statement or testimony of an accomplice *to convict the defendant* only if: [¶] 1. The accomplice's statement or testimony is supported by other evidence that you believe. [¶] 2. That supporting evidence is independent of the accomplice's statement or testimony. [And] [¶] 3. The supporting evidence tends to connect the defendant to the commission of the crimes." (Italics added.) Finally, the instruction told the jury "[a]ny statement or testimony of an accomplice *that tends to incriminate the defendant* should be viewed with caution." (Italics added.)

The instruction declared it was for the jury to determine whether Villamar was an accomplice. In the event they concluded she was not, then her testimony was to be treated the same as any other witness. Even if the jury concluded Villamar was an accomplice, the italicized portions of the instruction reflect, the corroboration requirement and caution against relying on her testimony only applied to her testimony "against" defendant or if her testimony would support his conviction. Nothing in the instruction placed such limits on any part of Villamar's testimony favorable to defendant.

Defendant's reliance on *Cool v. United States* (1972) 409 U.S. 100 [93 S.Ct. 354, 34 L.Ed.2d 335] is unavailing. That case reversed a conviction where the court instructed the jury that the accomplice's exculpatory testimony had to be proven true beyond a reasonable doubt before it could be considered. (See *People v. Lawley* (2002) 27 Cal.4th 102, 161-162.)

6

DISPOSITION

The judgment is affirmed.

RYLAARSDAM, ACTING P. J.

WE CONCUR:


FYBEL, J.


THOMPSON, J.