Filed 10/13/25  P. v. Hartman CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C099760 |
| Plaintiff and Respondent, | (Super. Ct. No. 19F4938) |
| v. | |
| MATTHEW WADE HARTMAN, | |
| Defendant and Appellant. | |

A jury found defendant Matthew Wade Hartman guilty of first degree murder (count 1), first degree robbery (count 2), and first degree burglary (count 3).  The jury found true robbery murder, burglary murder, and lying in wait special circumstance allegations.  (Pen. Code, § 190.2, subd. (a)(15), (17)(A) & (17)(G).)[1]  The jury also found true that defendant personally and intentionally discharged a firearm and proximately

---

[1]  Undesignated statutory references are to the Penal Code.

caused great bodily injury or death in the commission of count 1. (§ 12022.53, subd. (d).) The trial court sentenced defendant to an aggregate term of a determinate term of five years plus an indeterminate term of life without the possibility of parole (LWOP). With respect to count 1, the court imposed LWOP based on the robbery murder special circumstance finding, imposed and stayed pursuant to section 654 two additional LWOP terms based on the other special circumstance findings, and imposed and stayed pursuant to section 654 an additional 25 year to life term based on the section 12022.53, subdivision (d) enhancement finding. The court also imposed a middle term of 4 years on count 2, stayed pursuant to section 654; a middle term of 4 years on count 3, stayed pursuant to section 654; and a consecutive term of five years for a section 273.5, subdivision (a) conviction in case No. 16F3036.

On appeal, defendant asserts instructional error and contends the court deprived him of his federal due process rights by not allowing allocution[2] unless he subjected himself to cross-examination. We reject each of these assertions.

The People contend we should correct the court's unauthorized sentence on count 1. We will modify the judgment to impose an unstayed 25 year to life term for the firearm enhancement on count 1 to run consecutively with the previously imposed LWOP sentence. We will also modify the judgment to strike the two unstayed LWOP terms. As modified, the judgment is affirmed.

_____

[2] "In legal parlance, the term 'allocution' has traditionally meant the *trial court's inquiry of a defendant* as to whether there is any reason why judgment should not be pronounced. [Citations.] In recent years, however, the word 'allocution' has often been used for *a mitigating statement made by a defendant in response to the court's inquiry*. [Citation.] Here, we apply the term's traditional meaning." (*People v. Evans* (2008) 44 Cal.4th 590, 592, fn. 2 (*Evans*).) Defendant, however, does not.

# I. DISCUSSION

## A.      *Alleged Instructional Error*

Defendant raises two assertions of instructional error.  At trial, defendant did not raise either argument.  "We nevertheless address their merits, because claims of instructional error are reviewable on appeal to the extent they implicate a defendant's substantial rights."  (*People v. Famalaro* (2011) 52 Cal.4th 1, 35.)

### 1.      *Instructions on Post-Crime Conduct*

Defendant argues the trial court violated due process by giving the jury "one-sided" and "unbalanced" instructions on post-crime conduct and consciousness of guilt.  The court instructed the jury with CALCRIM No. 362 (false statements), CALCRIM No. 371 (suppression of evidence), and CALCRIM No. 372 (flight).[3]  Defendant argues these instructions violated his right to due process by informing the jury that evidence of his post-crime conduct could be used to convict, without also explaining that it could rely on

---

[3]  The jury was instructed with CALCRIM No. 362 as follows:  "If the defendant made a false or misleading statement before this trial relating to the charged crime, knowing the statement was false or intending to mislead, that conduct may show he was aware of his guilt of the crime and you may consider it in determining his guilt.  [¶]  If you conclude that the defendant made the statement, it is up to you to decide its meaning and importance.  However, evidence that the defendant made such a statement cannot prove guilt by itself."

The jury was instructed with CALCRIM No. 371 as follows:  "If the defendant tried to hide evidence or discourage someone from testifying against him, that conduct may show that he was aware of his guilt.  If you conclude that the defendant made such an attempt, it is up to you to decide its meaning and importance.  However, evidence of such an attempt cannot prove guilt by itself."

The jury was instructed with CALCRIM No. 372 as follows:  "If the defendant fled immediately after the crime was committed, that conduct may show that he was aware of his guilt.  If you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct.  However, evidence that the defendant fled or tried to flee cannot prove guilt by itself."

3

post-crime conduct to acquit. In particular, he cites examples of his cooperation with law enforcement. We are not persuaded.

Defendant directs our attention to a footnote in *Cool v. United States* (1972) 409 U.S. 100 (*Cool*), which, he says, "controls this case." In *Cool*, the defense relied almost exclusively on the testimony of the defendant's alleged accomplice, which was completely exculpatory in nature. (*Id*. at p. 101.) The trial court instructed the jury on accomplice testimony, in relevant part, as follows: " 'If the [accomplice] testimony carries conviction and you are convinced it is true *beyond a reasonable doubt*, the jury should give it the same effect as you would to a witness not in any respect implicated in the alleged crime and you are not only justified, but it is your duty, not to throw this testimony out because it comes from a tainted source.' " (*Id*. at p. 102.)

The United States Supreme Court explained that the instruction clearly implied that the jury should disregard the accomplice's testimony "unless it was 'convinced it is true beyond a reasonable doubt.' " (*Cool, supra*, 409 U.S. at p. 102.) It concluded, "Such an instruction places an improper burden on the defense and allows the jury to convict despite its failure to find guilt beyond a reasonable doubt." (*Id*. at pp. 102-103.) Defendant relies on a footnote to this conclusion in which the court discussed the next paragraph of the instruction, in which the jury was told: " 'I further instruct you that testimony of an accomplice may alone and uncorroborated support your verdict of guilty of the charges in the Indictment if believed by you to prove beyond a reasonable doubt the essential elements of the charges in the Indictment against the defendants.' " (*Id*. at p. 103, fn. 4.) The court stated, "Even had there been no other error, the conviction would have to be reversed on the basis of this instruction alone." (*Ibid*.) The court reasoned that "even if it is assumed that [the alleged accomplice's] testimony was to some extent inculpatory, the instruction was still fundamentally unfair in that it told the jury that it could convict solely on the basis of accomplice testimony without telling it that it could acquit on this basis." (*Ibid*.)

4

Defendant argues that, "[j]ust as in *Cool*, the trial court's failure to give balanced instructions on how the jury could use post-crime conduct here violated [defendant]'s federal constitutional rights." Defendant's reliance on *Cool* is unavailing. None of the instructions told jurors that defendant's post-crime conduct could only be considered to support a finding of guilt. Rather, the instructions informed jurors that certain types of conduct could demonstrate consciousness of guilt. Each of the challenged instructions directed jurors to first determine whether the post-crime conduct occurred, and then determine the significance of that conduct. Nothing in the instructions barred jurors from considering defendant's other post-crime conduct. Defendant was free to argue that his cooperation with law enforcement was evidence of innocence.

Furthermore, the instructions plainly informed jurors that they could *not* rely on evidence of defendant's post-crime conduct as the sole basis for finding guilt. Rather, they told jurors that evidence of false statements, suppression of evidence, and flight *may* show consciousness of guilt, but do not, by themselves, prove guilt. As our Supreme Court has explained, these instructions "made clear to the jury that certain types of deceptive or evasive behavior on a defendant's part could indicate consciousness of guilt, while also clarifying that such activity was not of itself sufficient to prove a defendant's guilt, and allowing the jury to determine the weight and significance assigned to such behavior. The cautionary nature of the instructions benefits the defense, admonishing the jury to circumspection regarding evidence that might otherwise be considered decisively inculpatory. [Citations.] We therefore conclude that these consciousness-of-guilt instructions did not improperly endorse the prosecution's theory or lessen its burden of proof." (*People v. Jackson* (1996) 13 Cal.4th 1164, 1224 [discussing CALJIC versions of CALCRIM Nos. 361, 371, and 372]; see also *People v. Famalaro, supra*, 52 Cal.4th at p. 35 [consciousness of guilt instruction did not violate federal constitutional rights to due process or a fair trial]; *People v. Jurado* (2006) 38 Cal.4th 72, 125 [consciousness of guilt

5

instructions were not impermissibly argumentative or misleading, and did not permit the jury to draw irrational inferences].)

Defendant's analogy to *Cool* is inapt. (See *People v. Peterson* (2020) 10 Cal.5th 409, 456 [distinguishing *Cool* where, as here, challenged instruction could not be said to have "put a thumb on the scale of the jury's deliberations by informing them they could return a guilty verdict based entirely on one piece of the prosecution's evidence"].) As such, we reject his claim of instructional error based on that authority.

2.      *CALCRIM Nos. 301 and 335*

Defendant argues the trial court erred in giving conflicting instructions that permitted the jury to rely on Carleen Honaker's uncorroborated accomplice testimony to convict. We disagree.

The court instructed with CALCRIM No. 335 as follows:

"If the crimes charged were committed, then Carleen Honaker and the defendant were accomplices to those crimes.

"You may not convict the defendant of any of the charged crimes or find any of the special allegations or special circumstances true based upon the statements or testimony of an accomplice alone. You may use a statement or testimony of an accomplice that tends to incriminate the defendant to convict the defendant only if: one, the accomplice's statement or testimony is supported by other evidence that you believe; two, that supporting evidence is independent of the accomplice's statement or testimony; and three, that supporting evidence tends to connect the defendant to the commission of the crime.

"Supporting evidence, however, may be slight. It does not need to be . . . enough, by itself, to prove that the defendant is guilty of the charged crime, and it does not need to support every fact mentioned by the accomplice in the statement or about which the witness testified. On the other hand, it is not enough if the supporting evidence merely

6

shows that a crime was committed or the circumstances of its commission.  The

supporting evidence must tend to connect the defendant to the commission of the crime.

"A statement or testimony of an accomplice that tends to incriminate the defendant

should be viewed with caution.  You may not, however, arbitrarily disregard it.  You

should give that statement or testimony the weight you think it deserves after examining

it with care and caution and in the light of all the other evidence."

The court also instructed the jury with CALCRIM No. 301 that "[t]he testimony of

only one witness can prove any fact.  Before you conclude that the testimony of one

witness proves a fact, you should carefully review all the evidence."  The bench notes to

CALCRIM No. 301 indicate that when any testimony requires corroboration to be

considered, the instruction should be preceded by the bracketed language, "[Unless I

instruct you otherwise,]."  Defendant did not object to the exclusion of the bracketed

language.[4]

The California Supreme Court rejected an argument similar to defendant's in

*People v. Noguera* (1992) 4 Cal.4th 599, which is essentially on point.  There, the trial

court had instructed the jury with an unmodified version of CALJIC No. 2.27 that

testimony of a single witness was sufficient for the proof of any fact.  (*Noguera, supra*, at

pp. 630-631 & fn. 8.)  The jury was also instructed with CALJIC No. 3.11 that testimony

of an accomplice must be corroborated in order to convict.  (*Noguera, supra,* at p. 630.)

The defendant contended, as here, that "the two instructions are contradictory and in

combination confused the jury, permitting defendant to be convicted on the basis of [the

_____

[4]  In light of our conclusion that defendant's claim does not have merit, we need not
address the People's assertion that defendant invited the error he now complains.  Nor do
we address defendant's assertion that his trial counsel's failure to object constituted
ineffective assistance of counsel.

7

accomplice's] uncorroborated testimony alone." (*Ibid*.) Our Supreme Court rejected the argument:

"We have encountered this claim repeatedly since our initial consideration of it in *People v. Chavez* (1985) 39 Cal.3d 823, 829-832. In *Chavez*, we concluded that 'we must look to the entire charge, rather than merely one part, to determine whether error occurred. [Citation.]' [Citation.] We have since refined the test formulated in *Chavez* to encompass determinations whether the jury 'is instructed on the kind of evidence necessary to constitute corroboration, on the method of determining whether the accomplice's testimony was corroborated, on viewing the accomplice's testimony with distrust, and [whether] the parties proceed[ed] on the premise that corroboration is required.' [Citation.] Where these criteria are met, there is no error." (*Noguera, supra*, 4 Cal.4th at p. 630.)

Here, the jury was instructed with CALCRIM No. 334 on the nature and sufficiency of corroborative evidence, and the requirement that accomplice testimony be viewed with "caution." The parties also proceeded on the premise that corroboration is required. During closing argument, the prosecutor argued extensively that Honaker's testimony had been corroborated.

Thus, as in *Noguera*, "we conclude that nothing in the combined instructions suggested to the jurors that corroboration of [Honaker]'s testimony was not required: 'A reasonable juror would have recognized [CALCRIM No. 301] as setting forth the general rule and the charge on accomplice testimony as an exception to it. [Citations.] Nothing before us indicates that the jurors may have acted otherwise.' " (*Noguera, supra*, 4 Cal.4th at p. 631.) Accordingly, defendant's claim of instructional error with respect to accomplice testimony fails.

B.    *Statement in Response to Allocution*

Prior to sentencing, defendant indicated he would like to make a statement. Section 1204 provides a right to offer a personal statement in mitigation of punishment in

response to the court's allocution, but "any such statement must be made under oath and be subject to cross-examination." (*Evans, supra*, 44 Cal.4th at p. 598.) Consequently, the trial court explained that any statement would be made under oath, and the People would have an opportunity to examine defendant. Thereafter, defendant spoke with his attorney and decided not to make a statement.

While acknowledging that our Supreme Court in *Evans* "rejected a claim that the federal due process clause protected a defendant's right to allocute without being subject to cross-examination," defendant nonetheless argues that the trial court violated his federal due process rights by failing to allow him to allocute unless he subjected himself to cross-examination. He insists that *Evans* is not controlling because the defendant in *Evans* "did not make a due process claim based on the broad premise that due process protects those rights rooted in the common law, but simply a due process claim based 'on the opportunity to be heard "at a meaningful time and in a meaningful manner." ' " Even assuming defendant has not forfeited his due process claim based on the common law by failing to raise it in the trial court, we are unpersuaded. The *Evans* court discussed the common law origins of allocution and rejected the argument that there was "a right under the federal Constitution to make an *unsworn* personal statement *without being subject to cross-examination*." (*Evans, supra*, 44 Cal.4th at p. 600.) Instead, the court concluded that the statutory right "to make a sworn personal statement in mitigation that is subject to cross-examination" under section 1204 "affords the defendant a meaningful opportunity to be heard and thus does not violate *any* of defendant's rights under the federal Constitution." (*Evans, supra*, at p. 600, emphasis omitted and added.) Therefore, we reject defendant's claim of constitutional error.

C.    *Sentence on Count 1*

The People contend the trial court's sentence on count 1 was unauthorized and requires correction. The jury returned a true finding on the firearm enhancement allegation under section 12022.53, subdivisions (d), but the trial court stayed the

9

applicable punishment of 25 years to life pursuant to section 654, apparently based on its understanding that the special circumstance allegation was a sentencing enhancement. Section 12022.53, subdivision (j) provides, in relevant part, "When an enhancement specified in this section has been admitted or found to be true, the court shall impose punishment for that enhancement pursuant to this section rather than imposing punishment authorized under any other law, unless another *enhancement* provides for a greater penalty or a longer term of imprisonment." (Italics added.) Defendant contends the trial court was authorized to stay the imposition of the firearm allegation under this provision because his LWOP term was an "enhancement" that provided for a greater term of imprisonment. Defendant is incorrect.

Defendant was sentenced to LWOP on count 1 based on one of the special circumstance findings under section 190.2, subdivision (a)(17). Section 190.2, subdivision (a) provides: "The penalty for a defendant who is found guilty of murder in the first degree is death or imprisonment in the state prison for life without the possibility of parole if one or more of the following special circumstances has been found under Section 190.4 to be true." As such, section 190.2, subdivision (a)(17) imposes an alternate penalty for murder, not an enhancement. (See *People v. Jones* (2009) 47 Cal.4th 566, 576 ["A penalty provision 'sets forth an *alternate* penalty for the underlying felony itself, when the jury has determined that the defendant has satisfied the conditions specified in the statute' "]; *Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 898 ["a sentence enhancement is 'an additional term of imprisonment added to the base term' "].) The People correctly note there was no need for the trial court to impose and then stay additional LWOP sentences based on the additional special circumstance findings. Defendant does not dispute this conclusion. He does, however, argue the firearm enhancement could be stayed under section 12022.53, subdivision (j).

Defendant acknowledges that in *People v. Shabazz* (2006) 38 Cal.4th 55, our Supreme Court concluded an earlier version of section 12022.53, subdivision (j) did not

10

prevent the imposition of a 25 year-to-life enhancement under section 12022.53, subdivision (d) where a defendant was sentenced to LWOP based on a special circumstance finding. (*Shabazz, supra*, at p. 66.) At the time, "former subdivision (j) of section 12022.53 . . . provided: 'When an enhancement specified in this section has been admitted or found to be true, the court shall impose punishment [for that enhancement] pursuant to this section rather than imposing punishment authorized under any other provision of law, unless *another provision of law* provides for a greater penalty or a longer term of imprisonment.' [Citation.] The [*Shabazz*] court concluded that the italicized language meant 'another enhancement provision,' rather than 'any sentencing provision that provides for a sentence greater than that specified [section] 12022.53.' [Citation.] The Legislature subsequently amended subdivision (j) to reflect the Supreme Court's interpretation." (*People v. Sinclair* (2008) 166 Cal.App.4th 848, 853.) As such, its holding remains applicable.

Defendant omits key language from *People v. Brookfield* (2009) 47 Cal.4th 583 to assert the term "enhancement" in section 12022.53, subdivision (j) includes *all* alternative penalty provisions. This is not the case. In *Brookfield*, our Supreme Court held that "the Legislature's use of the term 'enhancement' in section 12022.53[, subdivision ](e)(2) was intended to refer broadly to any greater term of imprisonment for a crime that . . . is committed to benefit a criminal street gang. This means that, as used in the statute, the word 'enhancement' includes not only the sentence enhancements in section 186.22, but also the alternate penalty provisions *in that section*."[5] (*Brookfield, supra*, at p. 593, italics added.) Nothing in *Brookfield* modified the court's earlier

---

[5] Section 12022.53, subdivision (e)(2) provides: "An enhancement for participation in a criminal street gang pursuant to Chapter 11 (commencing with Section 186.20) of Title 7 of Part 1 shall not be imposed on a person in addition to an enhancement imposed pursuant to this subdivision, unless the person personally used or personally discharged a firearm in the commission of the offense."

11

interpretation of the interplay between a special circumstance finding and a section 12022.53, subdivision (d) firearm enhancement. As such, we conclude the court's determination that it was required to stay the firearm enhancement under section 654 was erroneous and the sentence was unauthorized.

We agree with the People that remand is not required. While the trial court was not permitted to stay the enhancement, section 12022.53, subdivision (h) provides that "[t]he court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement that is otherwise required to be imposed by this section." However, the record is clear that the trial court stayed the firearm enhancement because it believed it was required to do so and would not strike or dismiss it as an alternative to the unauthorized stay. Accordingly, we will modify the judgment to correct the sentence on count 1.

## II.  DISPOSITION

The judgment is modified to impose an unstayed 25 year to life term on count 1 to run consecutively to the previously imposed LWOP sentence.  The judgment is modified to strike the two additional LWOP terms that were stayed by the court.  The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.

/S/

_____
RENNER, J.

We concur:

/S/

_____
ROBIE, Acting P. J.

/S/

_____
WISEMAN, J.*

_____

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.