**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BRYANT KEITH WILLIAMS, *Petitioner-Appellant*, <br><br> v. <br><br> GARY SWARTHOUT, Warden, *Respondent-Appellee*. | No. 11-57255 <br><br> D.C. No. 2:10-cv-04053-AG-OP <br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Andrew J. Guilford, District Judge, Presiding

Argued and Submitted
June 4, 2014—Pasadena, California

Filed October 23, 2014

Before: Stephen Reinhardt, John T. Noonan,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge Noonan;
Dissent by Judge Murguia

# SUMMARY[*]

## Habeas Corpus

Reversing the district court's denial of Bryant Keith Williams's habeas corpus petition and remanding, the panel held that the state trial court's misstatement that Williams had pled guilty – a misstatement made immediately before trial commenced and not corrected until the jury began deliberating – violated his due process rights by depriving him of the presumption of innocence, and violated his Sixth Amendment right to an impartial jury.

The panel concluded that the California Court of Appeal decided both Williams's state and federal claims the same way: it found error under both state and federal constitutional law, but concluded that both were harmless. The panel held that the constitutional error was not rendered harmless by flawed curative instructions.

Dissenting, Judge Murguia disagreed with the majority's conclusion that the California Court of Appeal found state and federal constitutional error. She would hold that the California Court of Appeal determined that Williams's state and federal constitutional rights were not violated, and that this was not an unreasonable application of clearly established federal law.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

William J. Capriola (argued), Sebastopol, California, and John P. Ward, San Francisco, California, for Petitioner-Appellant.

Yun K. Lee, Deputy Attorney General, Los Angeles, California, for Respondent-Appellee.

**OPINION**

NOONAN, Circuit Judge:

Petitioner Bryant Keith Williams seeks federal habeas relief on the basis that the state trial court's misstatement that Williams had pled guilty—a misstatement made immediately before trial commenced and not corrected until the jury began deliberating—violated his due process rights by depriving him of the presumption of innocence, and violated his Sixth Amendment right to an impartial jury. We agree and reverse the district court's denial of habeas relief.

FACTS AND PRIOR PROCEEDINGS

At voir dire, on December 7, 2006, the trial judge stated: "the defendant has entered a not guilty plea denying that he is guilty of the[] three charges"—i.e., one count of false imprisonment and two counts of sexual penetration by a foreign object. On December 12, 2006, after the jury had been sworn, the judge stated:

> I will now explain the presumption of innocence and the people's burden of proof.

> *The defendant has pleaded guilty to the charges*. The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. You must not be biased against the defendant just because he has been arrested, charged with a crime, or brought to trial. A defendant in a criminal case is presumed to be innocent. This presumption requires that the people prove each element of a crime and special allegations beyond a reasonable doubt.

(Emphasis added.) Trial began that same day. On December 13, after closing arguments, the jury retired to deliberate.

Less than an hour into deliberation, the jury sent the judge the following note: "As a group we the jury feel we heard the judge state the defendant pleaded guilty before the trial. Is this true?"

On the record, before counsel and Williams, the judge—having reviewed the transcript—admitted his mistake. Both the court reporter and the district attorney had noticed the error, but neither said anything. Williams's counsel moved for a mistrial.

The judge reserved decision on Williams's motion. He summoned the jury and explained his mistake. He stated that "[t]he defendant has pleaded not guilty. That is why we are having a trial. If he had pleaded guilty, we wouldn't be having a trial. Okay. So I'm sorry. It's error on my part that I omitted the word 'not.'"

The judge admonished the jury that he had no knowledge beyond their own as to Williams's guilt or innocence. He asked whether any juror would be unable to accept this as true. The jurors were silent. He raised another concern: whether "throughout the trial [jurors] didn't pay attention because [they] were thinking somehow that he must be guilt [*sic*], so in that way it's tainting the process of [their] ability to be fair and impartial." He asked the jury if that was so. The jurors were silent. He reasserted that Williams had pled not guilty; asked whether any juror would "not [be] able to set aside [his misstatement] and be fair to the defendant"; and invited the jury's response. The jurors were silent. He ended with this:

> Then is there anyone here who believes that based on the court's mistake that they will not be able to give the defendant his rights in this case, the rights that I explained to you which is the right to remain silent, the presumption of innocence, the burden of proof, and the standard of proof beyond a reasonable doubt? Is there anyone here who believes that based on the court's mistake they will not be able to uphold those rights for the defendant if [*sic*] question, please, raise your hand.

No hands were raised. The judge denied Williams's motion for a mistrial and the court adjourned for the day.

Two days later, on December 15, 2006, juror number 1 ("Juror 1") sent the judge the following letter:

> I wanted to let you know that I feel a bit uncomfortable with the happenings that took

place on Wednesday regarding the court's error in reading that the defendant had pleaded guilty to the charges. I know common sense says that if the defendant pleaded guilty, then there would not be a trial; and that idea definitely crossed my mind. However, I decided to override that thought due to the fact that the court read that he pleaded guilty, so I thought he was guilty throughout the entire trial. I did not just say to myself, "The judge must have made a mistake, I'll just assume he pleaded not guilty." I did not do this for several reasons:

1.  The defense (or prosecution) did not correct you in your error. Since that is a crucial part of the instructions, I would think that someone would have corrected the court's error immediately.

2.  You originally said that the case would take 8 days, but then said it would only take a day and a half. I thought that might have to do with the defendant pleading guilty somewhere in between.

3.  In my opinion, the defense did not put up that great an effort to offer alternatives to the prosecution's case. To me, another sign that the defendant had pleaded guilty.

What I am saying in telling you these things is this: I went through the entire trial thinking that the defendant had pleaded, and was,

> guilty. I saw everything through that lens. I think it may be possible to ignore that during deliberation, but I can not be sure of that. I also can't be sure if I subconsciously have biases, given the false plea; and if I do have biases, those might play a role in deliberation.
>
> I am sorry I did not bring this to your attention on Wednesday, but I hadn't fully recognized it. I leave it to your discretion as to whether I am fit to serve on this jury, or if an alternate is needed in my stead.

The judge read the letter into the record outside the jury's presence. Based on this letter, the judge stated, "I do not believe that [Juror 1] is able to serve on this case."

Williams's counsel again moved for a mistrial. She noted that the judge had thoroughly explained his mistake, had polled the jury, and yet "we know that at least one person had grave reservations. And it's not simply a matter of unringing the bell . . . because this isn't something that occurred at the end of the case. This is something that occurred at the beginning." She added: "I don't think it would be fruitful to poll [the jury] now because the polling of the jury wasn't fruitful Wednesday evening, so I move for a mistrial."

The court summoned Juror 1. Asked to explain the letter, Juror 1 told the judge:

> [B]ecause you had said that [Williams pled guilty] and no one objected to that or no one corrected you, that throughout the trial I had that in my mind and –

[. . .]

> That he had pleaded guilty and so throughout the trial . . . if I heard evidence or heard testimony to support that fact, that I might have just said to myself, "Okay. That just supports his plea," as opposed to really paying attention to everything . . . . I had that in my mind throughout the trial and I kind of looked at things to support the plea or what I thought was the plea.

Before being summoned, Juror 1 had told the rest of the jurors about the note and its content. Juror 1 was dismissed.

The judge convened the remaining jurors, including alternates, and told them what had happened. The judge stated:

> [Juror 1] was under the assumption that the defendant had pleaded guilty and so he looked at the evidence to support the plea. That is what he said to me.

> Now, it cannot be that a juror looks at the trial from that perspective because then he is not fair. Right? He is not a fair juror if he is looking at it to support the plea. So he was honest about how he looked at the evidence. I excused him. Now, this is very important, very, very important obviously that we ensure that the defendant gets a fair trial. And I fell on the sword on Wednesday and I am falling on the sword again. It was my mistake. My

error. Defendant has never pleaded guilty. Never. So in listening to the evidence, it could not be that you were listening to the evidence to support the plea. That would have been wrong. That is a point of view that you could not have in listening to the evidence because you are supposed to be fair and impartial throughout the entire trial including the time in which you are listening to the evidence.

The judge then asked the jurors whether any of them felt that they had listened to evidence through the lens of the guilty plea. No juror spoke. Repeating the various presumptions—silence, innocence, etc.—the judge polled each juror individually, asking whether they could disregard the court's mistake. Every juror answered affirmatively. Williams's motion for a mistrial was denied and deliberations proceeded.

Williams was convicted of one count of false imprisonment and one of two counts of forcible sexual penetration by a foreign object. He was sentenced to a minimum of fifty years.

Williams appealed. The California Court of Appeal agreed with Williams that "error occurred." But the court concluded that the error "was cured and was therefore harmless under the circumstances." The California Supreme Court denied review without comment. On collateral review, the federal district court agreed that the trial court had "fully cured [its] error," and that Williams had failed to negate the

presumption that the jury had followed the trial court's instructions.

This appeal followed.

ANALYSIS

We review *de novo* the district court's denial of a petition for habeas corpus. *Cavitt v. Cullen*, 728 F.3d 1000, 1004 (9th Cir. 2013). Williams's habeas petition is subject to the requirements of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, a federal court may grant a habeas petition with respect to a "claim that was adjudicated on the merits in State court" only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

AEDPA "leav[es] 'primary responsibility' for adjudicating federal claims to the States." *Johnson v. Williams*, 133 S. Ct. 1088, 1097 (2013) (citing *Woodford v. Visciotti*, 537 U.S. 19, 27 (2002)). It follows that absent "evidence lead[ing] very clearly to the conclusion that a federal claim was inadvertently overlooked in state court," a federal habeas court presumes that the state court reached a petitioner's fairly presented federal claim. *Id.*

No such evidence exists here. Williams's federal claims were fully and squarely presented to the California Court of Appeal: on direct appeal, Williams argued that the trial court's misstatement deprived him of his Sixth Amendment

right to an impartial jury and his Fifth and Fourteenth Amendment due process rights to the presumption of innocence. Indeed, at oral argument, the State's counsel conceded that the state court had considered and ruled on the federal constitutional question.

The California Court of Appeal addressed both error and prejudice in its decision: "According to Williams, the court's misstatement was error insofar as it undercut his rights to a fair and impartial jury that was correctly instructed on the burden of proof. . . . We agree that error occurred, but conclude it was cured and was therefore harmless under the circumstances."

We are required to defer to the California Court of Appeal's determination as to whether federal constitutional error occurred. In this case, that deference favors Williams. The state argues, correctly, that California does not require state courts to "engage in a 'separate constitutional discussion' where a defendant's federal constitutional claim merely provides a 'gloss'" on the state law claim he raises simultaneously. *See also Johnson*, 133 S. Ct. at 1094–95 (explaining that a state court will often feel no need to rule expressly on a federal claim because "a line of state precedent is viewed as fully incorporating a related federal constitutional right . . . [and the] state appellate court may regard its discussion of the state precedent as sufficient to cover a claim based on the related federal right"). We agree—but this leads to a conclusion opposite to that urged by the state. Since one claim was "merely . . . a 'gloss'" on the other, it is only logical to conclude that the state court decided both Williams's state and federal claims in the same way: it found error under both state and federal constitutional law, but concluded that both were harmless. *See Ayala v.*

*Wong Ayala v. Wong*, — F.3d —, No. 09-99005, 2014 U.S. App. LEXIS 3699, at \*4–9 (9th Cir. amended Feb. 25, 2014), *reh'g en banc denied*, — F.3d —, 2014 U.S. App. LEXIS 3698 (9th Cir. Feb. 25, 2014). Even if we were to read the state court's decision as finding error under state law expressly, we can be sure it would not have reached the *opposite* conclusion with respect to federal constitutional error without even noting that determination. Given the state's concession that the state court did decide the federal constitutional question, we see no possibility that it did not do so in Williams' favor.

The determination that federal constitutional error occurred was not only not contrary to clearly established law, it was correct.

Statements by the trial court are "viewed as definitive and binding statements of the law" and carry great weight with the jury. *Boyde v. California*, 494 U.S. 370, 384 (1990) (citations omitted). While it is true that a single statement must not be judged in artificial isolation, *see Boyd v. United States*, 271 U.S. 104, 107 (1926), the trial judge's misstatement—not caught or corrected until deliberation—demonstrably infected the entire trial. Wrote the jury after testimony, argument of counsel, and receipt of exhibits in evidence: "As a group, we the jury feel we heard the judge state the defendant pleaded guilty *before* the trial." (Emphasis added.)

Had the trial court's misstatement gone uncorrected, it would have violated Williams's due process rights. In *Dixon v. Williams*, — F.3d —, No. 10-17145, 2014 U.S. App. LEXIS 11025 (9th Cir. amended June 11, 2014) (per curiam), the trial court misstated the instruction for self-defense.

Rather than stating, correctly, that an "honest but unreasonable belief in the necessity for self-defense does not negate malice," the state trial court said "honest but *reasonable* belief." *Id.* at \*4–5 (emphasis in original). That error, this court held, was constitutionally infirm for reducing the state's burden. *Id.* at \*15 (citing *Cool v. United States*, 409 U.S. 100, 104 (1972)). Here, had the trial court's misstatement gone uncorrected, it would have eliminated the state's burden entirely.[1]

One juror, moreover, admitted that the judge's misstatement had impaired his ability to remain impartial—a clear Sixth Amendment violation. *See Duncan v. Louisiana*, 391 U.S. 145, 153 (1968) (Sixth Amendment guarantees right to trial by impartial jury); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961) (same). Had the misstatement gone uncorrected, the error would have been structural for "vitiat[ing] *all* the jury's findings." *Sullivan v. Louisiana*, 508 U.S. 275, 281 (1993) (emphasis in original).

But the trial judge attempted to correct the misstatement. Did he succeed?

---

[1] "The state court 'd[id] not believe that a reasonable juror would conclude that a trial was underway for a defendant who had pleaded guilty after [also] being told the defendant's guilt had to be proven beyond a reasonable doubt.' However, 'general instructions on the State's burden of persuasion and the defendant's presumption of innocence are not 'rhetorically inconsistent with a conclusive . . . presumption [such as a guilty plea],' because '[t]he jury could have interpreted the two sets of instructions as indicating that the [plea] was a means by which proof beyond a reasonable doubt . . . could be satisfied.'' *Francis v. Franklin*, 471 U.S. 307, 319 (1985) (citing *Sandstrom v. Montana*, 442 U.S. 510, 518–19 n.7 (1979)); *see also id.* at 322 ('A reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied . . . .')."

Juries are presumed to follow the court's instructions, *Richardson v. Marsh*, 481 U.S. 200, 210 (1987), but that presumption may be overcome when "there is an 'overwhelming probability' that the jury will be unable to [do so], and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant." *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987) (citing *Richardson*, 481 U.S. at 208; *Bruton v. United States*, 391 U.S. 123, 136 (1968)).

Under *Richardson*, this court presumes that Williams's jury credited the judge's misstatement that Williams had pled guilty—at least until the error was revealed. This presumption is corroborated by the jury's letter to the court asking whether it was true that the judge had stated that the defendant had pled guilty before trial.

There can be no dispute that during trial the jury's view of the evidence was seriously compromised by the judge's misstatement. But was the misstatement cured? Not by the judge's first instruction. The jury was polled, as a group, to assess compliance and no juror demurred. Yet two days later Juror 1 indicated that the judge's misstatement had affected how he had listened to, heard, and processed the evidence. It had affected his ability to remain impartial.

The judge's second curative instruction fared better: no juror voiced his or her inability to remain impartial; and this, argues the State, is proof that it worked. But the jury's silence proves only that it was silent—not why. And record evidence supports Williams's contention that the judge's extraneous monologue, which preceded polling, silenced the jury.

Rather than explain Juror 1's statements, poll the jury, and leave it at that, the judge rebuked Juror 1 for his

"reservations about his ability" to ignore the judge's misstatement. Juror 1, declared the judge, was "not a fair juror." The implication was clear: any juror who questioned her ability to disregard the judge's misstatement was "not fair." The judge continued:

> So in listening to the evidence, *it could not be* that you were listening to the evidence to support the plea. That *would have been wrong*. That is a point of view that *you could not have* in listening to the evidence because you are supposed to be fair and impartial throughout the entire trial including the time which you are listening to the evidence.

(Emphases added.)

Told that "it could not be" that the judge's misstatement had affected her judgment—told that "[t]hat would have been wrong"—what juror would admit that her judgment had been affected? Told that she "could not have" a point of view that naturally flowed from the judge's misstatement, what juror would admit to having that point of view? What juror would concede in open court that she was not "fair and impartial"? It is all well and good to rely on the "naive assumption that prejudicial effects can be overcome" by a curative instruction, *Krulewich v. United States*, 336 U.S. 440, 453 (1949) (Jackson, J., concurring) (citation omitted); but it is a different matter entirely to fault, in open court, jurors unable to engage in the requisite "mental gymnastic," *Nash v. United States*, 54 F.2d 1006, 1007 (2d Cir. 1932) (Hand, J.); *cf. Toolate v. Borg*, 828 F.2d 571, 574 n.3 (9th Cir. 1987) (noting that the Supreme Court has recognized, in *Bruton v. United States*, 391 U.S. 123, 135–36 (1968), and *Jackson v. Denno*,

378 U.S. 368, 388–89 (1964), that confessions—and by extension, those reported by the court as guilty pleas—have a "powerfully incriminating effect" and are therefore particularly difficult for a jury to disregard). The judge's digression silenced the jury, raising serious doubts as to the efficacy of the second curative instruction.

As the California Court of Appeal concluded, the trial judge's misstatement was constitutional error. Where constitutional error is found, we assess its prejudicial impact under *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *See Merolillo v. Yates*, 663 F.3d 444, 454 (9th Cir. 2011). We do so, moreover, "without regard for the state court's harmlessness determination"—without, in other words, analyzing under AEDPA whether the state court's harmlessness determination was contrary to, or an unreasonable application of, clearly established federal law. *Pulido v. Chrones*, 629 F.3d 1007, 1012 (9th Cir. 2010). Only *Brecht*, and not the "clearly established Federal law" standard, applies here.

Under *Brecht*, habeas petitioners are entitled to relief if the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). The *Kotteakos* Court explained:

> [I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was

enough to support the result, apart from the
phase affected by the error. It is rather, even
so, whether the error itself had substantial
influence. If so, or if one is left in grave
doubt, the conviction cannot stand.

*Kotteakos*, 328 U.S. at 764–65 (internal citations omitted).

Viewed in the context of the trial as a whole, the judge's initial misstatement and his ineffective attempts to cure it were devastating to Williams. The State's case was hardly overwhelming; it relied almost entirely on Christyn's testimony. The only other evidence presented by the State was the recording of a phone call from Williams to Christyn several weeks after the incident—a recording that, at most, demonstrated that Williams and Christyn had had some sort of falling out. No physical evidence and no other eyewitness testimony tied Williams to the crime. It was therefore of the utmost importance that jurors presumed him innocent when they heard and evaluated Christyn's testimony. Because we conclude that it is highly unlikely that the attempted curative instructions rendered the constitutional error harmless, the error was prejudicial under *Brecht.*

Williams was convicted on the basis of the victim's testimony, which the jury heard while under the impression that Williams had pled guilty—in other words, while under the impression that he was guilty. It is, we find, impossible to say that the "judgment was not substantially swayed by the [trial judge's] error." Williams's conviction must be reversed.

* * *

"[T]rial by jury has been understood to require that '*the truth of every accusation . . .* be confirmed by the unanimous suffrage of twelve of [the defendant's] equals and neighbors.'" *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000) (emphasis and second brackets in original) (quoting 4 W. Blackstone, *Commentaries on the Laws of England* 343 (1769)). Where the judge assigns guilt, even inadvertently, he strips the jury of its fundamental role and subverts the requirement that the jury must confirm the truth of every accusation. "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin v. United States*, 156 US. 432, 453 (1895)." The constitutional error is manifest. It was not rendered harmless by the flawed curative instructions.

We reverse the district court's denial of Williams's petition for writ of habeas corpus, and remand with instructions to grant a writ requiring the state to release him from custody unless it initiates new trial proceedings within a reasonable period of time to be determined by the district court. **REVERSED** and **REMANDED**.

---

MURGUIA, Circuit Judge, dissenting:

I disagree with the majority's conclusion that the California Court of Appeal found state and federal constitutional error. I would hold that the California Court of Appeal determined that Williams's state and federal constitutional rights were not violated. I would further hold

that this was not an unreasonable application of clearly established federal law.

## I.

Under California law, a defendant's right to a fair and impartial jury can be violated when there is an objective, substantial likelihood of juror bias. *See People v. Ramos*, 101 P.3d 478, 497 (Cal. 2004). The court of appeal's decision reads as follows:

> According to Williams, the court's misstatement was error insofar as it undercut his rights to a fair and impartial jury that was correctly instructed on the burden of proof. He contends that despite these steps, the court's error could not be cured because, viewed objectively, it was so prejudicial that it was inherently and substantially likely to have influenced a juror. (See *People v. Ramos (2004) 34 Cal.4th 494, 519*.) We agree that error occurred, but conclude it was cured and was therefore harmless under the circumstances.
>
> The one juror who was biased due to the court's error was removed. Even though the error obviously affected that juror, we do not believe, when the record is viewed as a whole, that the error was inherently and substantially prejudicial on an objective basis.

The court of appeal finally concluded that "[u]nder well-established principles of harmless error concerning trial court

instructional misstatements, we hold that the error was cured," citing three jury instruction misstatement cases where, despite the trial court making a misstatement while instructing the jury, the court of appeal ultimately concluded that the misstatement was harmless and did not rise to the level of a constitutional violation. *See People v. Robinson*, 124 P.3d 363, 396 n.24 (Cal. 2005) (harmless error where trial court mistakenly told the prospective jurors that "race is not to be considered *until reaching* the penalty" but later properly and repeatedly told the jury that race had no place in its decision-making process) (emphasis in original); *People v. Box*, 5 P.3d 130, 169 (Cal. 2000) (harmless error where trial court misspoke while instructing jury but gave jury correct written instructions).

It is clear from the court of appeal's decision that it did not find constitutional error because, as in each of the cases it cited, the trial court's error was harmless and did not rise to the level of a constitutional violation. We then presume that the court of appeal also held that the trial court's misstatement was not a federal constitutional violation. *See Johnson v. Williams*, 133 S. Ct. 1088, 1094–96 (2013) (holding that even where a state court does not separately discuss a federal claim there is a presumption that the state court adjudicated the federal claim on the merits). We review this adjudication of the merits of Williams's claim—that the trial court's misstatement that Williams had pled guilty did not violate Williams's Sixth and Fourteenth Amendment rights—under AEDPA. *See* 28 U.S.C. § 2254(d).

## II.

In my view, the California Court of Appeal's conclusion that Williams's federal constitutional right to an impartial

jury was not violated was not unreasonable. *See* 28 U.S.C. § 2254(d)(1) ("An application for a writ of habeas corpus . . . shall not be granted . . . unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law). There is no *per se* rule that it is a constitutional violation when a trial court makes a statement like the regrettable statement made in this case. A trial court that realizes that it has made a misstatement of this nature has two options: first, declare a mistrial, or second, try to cure the error rather than begin the trial anew. The trial court here decided to take the latter approach and went to great lengths to cure its misstatement. After the jury brought the trial court's misstatement to its attention, the trial court repeatedly and emphatically acknowledged its error before the jury, twice instructed the jury correctly on the presumption of innocence and the state's burden of proof, repeatedly questioned the jurors about whether they remained confused about the presumption of innocence and the state's burden, and polled the jurors on whether they harbored any doubts as to their ability to fairly deliberate. I disagree with the majority that the trial court's second curative instruction operated as a rebuke that silenced the jurors.

In my view, because no other jurors came forward, a fairminded jurist could conclude that the trial court's measures were sufficient to cure its misstatement. Therefore, the California Court of Appeal's decision that Williams's Sixth and Fourteenth Amendment rights were not violated was not unreasonable, and we do not reach prejudice under *Brecht v. Abrahamson*, 507 U.S. 619 (1993). Accordingly, I respectfully dissent.